NICHOLS, Admr., et al., Appellees,

v.

VILLARREAL et al., Appellants;

Ohio Department of Mental Health, Appellee.

[Cite as *Nichols v. Villarreal* (1994), 94 Ohio App.3d 173.]

Court of Appeals of Ohio,
Franklin County.

No. 93API10–1432.

Decided March 31, 1994.

*Luper, Wolinetz, Sheriff & Neidenthal, Frederick M. Luper* and *Jack L. Stewart,* for appellees John Nichols et al.

*Bannon, Howland & Dever* and *Robert E. Dever,* for appellants.

*Lee Fisher,* Attorney General, and *Mary Kirchner Crawford,* Assistant Attorney General, for appellee Ohio Department of Mental Health.

PEGGY L. BRYANT, Judge.

Defendants and third-party plaintiffs-appellants, Richard R. Villarreal, M.D. and Richard R. Villarreal, M.D., Inc., appeal from a judgment of the Ohio Court of Claims finding pursuant to R.C. 2743.02(F) that Villarreal was not an officer or employee of the state of Ohio as defined in R.C. 109.36, and that appellants were

not entitled to immunity under R.C. 9.86. Appellants' single assignment of error states:

"The Court of Claims erred in finding that Dr. Villarreal was not an employee of the state of Ohio pursuant to the personal service contract among the Ohio Department of Mental Health, Portsmouth Receiving Hospital and Shawnee Mental Health."

On December 6, 1991, plaintiffs, John Nichols, John Nichols as administrator of the estate of William Nichols, Dorthea Nichols and Jerry Nichols, filed a complaint against appellants in the Scioto County Common Pleas Court, asserting that appellants' negligence directly and proximately caused the death of plaintiffs' decedent, William Nichols.

Appellants in turn filed a third-party complaint against the Ohio Department of Mental Health and the Ohio Department of Mental Retardation and Developmental Disabilities; pursuant to R.C. 2743.03, appellants then filed a petition for removal. Although the Ohio Department of Mental Retardation and Developmental Disabilities ultimately was dismissed from the action, on June 7, 1993, appellants filed a motion pursuant to R.C. 2743.02(F) for a determination of whether Villarreal was an officer or employee of the state of Ohio, and in particular, the Ohio Department of Mental Health, and thereby entitled to immunity under R.C. 9.86.

The trial court conducted an evidentiary hearing on appellants' motion, and issued a decision finding that Villarreal was not an officer or employee of the state of Ohio and that appellants were not entitled to immunity under R.C. 9.86. Following a modified entry journalizing the trial court's decision and finding no just cause for delay, appellants appealed to this court, asserting that the trial court had erred in its conclusion regarding appellants' immunity.

Pursuant to R.C. 2743.02(F), the trial court had the exclusive original jurisdiction to determine initially Villarreal's immunity under R.C. 9.86, which provides:

"[N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

By its terms, R.C. 9.86 requires a preliminary determination concerning the status of an individual defendant, as the immunity provided under that section

applies to officers or employees of the state. R.C. 109.36 defines a "state officer" or "employee" as:

"[A]ny person who, at the time a cause of action against him arises, is serving in an elected or appointed office or position with the state; is employed by the state; or is rendering medical, nursing, dental, podiatric, optometric, physical therapeutic, psychiatric or psychological services pursuant to a personal services contract with a department, agency, or institution of the state. Officer or employee does not include any person elected, appointed, or employed by any political subdivision of the state."

The testimony presented was complicated, but largely undisputed. By statute, local alcohol, drug addiction, and mental health services boards, referred to in the trial court and in this opinion as 648 boards, are charged with the statutory responsibility of ensuring that members of its service area are provided with a full range of mental health services according to a plan submitted to the state. Pursuant to R.C. Chapter 340, 648 boards can be single-county or multicounty; in the present case, the 648 board encompassed Adams, Lawrence and Scioto Counties.

Funded by a line item in the state budget, the 648 boards receive money transferred through the Ohio Department of Mental Health to the appropriate county treasury. With those funds, the 648 board is able to enter into contracts for the provision of services in its service area. A local 648 board can determine which agency to contract with as well as the amount of money to be paid under such contracts.

In this case, the local 648 board for Adams, Lawrence and Scioto Counties entered into a tripartite contract with Portsmouth Receiving Hospital ("PRH"), operated by the Ohio Department of Mental Health, and Shawnee Mental Health Center. Under that agreement, Shawnee Mental Health Center, a private corporation, was designated as the agency for providing mental health services, through a chief clinical officer, in the three-county service area served by the local 648 board. Shawnee Mental Health Center employed Villarreal as its chief clinical officer; part of his function was to provide his services as a psychiatrist to those in the 648 board's service area who entered PRH under the agreement.

No dispute exists that Villarreal was an employee of Shawnee Mental Health Center. Shawnee Mental Health Center paid Villarreal his salary through funds the local 648 board paid to it under its contract with the 648 board. Shawnee

Mental Health Center established Villarreal's hours, provided him liability insurance, paid him every two weeks and granted him vacation or sick leave. Shawnee Mental Health Center received money from the 648 board for any work that Villarreal performed at PRH.

Nonetheless, appellants contend that Villarreal's contract with Shawnee Mental Health Center does not prevent Villarreal's entering into a personal services contract with PRH. In that respect, Villarreal contends that the hospital charged for his services, but forwarded to him none of the funds collected; that he was evaluated by PRH's clinical director, Dr. Monica Nicholas; that he was required to treat those patients assigned to him and was unable to select his own patients at PRH; and that, at the time the agreement at issue was entered into, he was assured that he would be held immune from liability.

To rebut that testimony, the state presented the testimony of Rick Harlow, the chief executive officer at PRH. While acknowledging that Villarreal treated patients at PRH, Harlow testified that Villarreal's duties were performed pursuant to the agreement between Shawnee Mental Health Center and the 648 board; under that agreement, Villarreal was required to treat all patients from Scioto, Adams and Lawrence Counties for the first twenty-one days of their admission. Harlow further testified that at all pertinent times Villarreal was not on the payroll of PRH, nor did any contract exist between Villarreal and PRH for the purchase of his services in treating patients at PRH.

Harlow acknowledged that PRH had personal services contracts with some doctors. In those instances, PRH had a contract with a doctor specifying the number of hours or service units the doctor was to render at PRH. The contract specified an hourly rate of pay and the maximum number of hours that the doctor was to work. Further, PRH was involved in negotiating the hourly rate of pay for such doctors. Doctors having personal services contracts with PRH had set work schedules, were required to come in on time or call in, were required to schedule vacation or time off, and were required to sign in and out to provide proof that they had provided the service. Sign-in sheets were then submitted to PRH's business office for processing payment, as the amount of money paid to doctors on personal services contracts with PRH was dependent upon the exact number of hours they worked. Harlow never signed such a contract with Villarreal, and he has never seen one involving Villarreal and PRH; further, Villarreal is not subject to the work schedule restrictions and payment procedures common to personal services contracts between PRH and doctors who have personal services contracts with the hospital.

Under the foregoing circumstances, the fact that the money by which Villarreal was paid originated in the state budget and passed through the Department of

Mental Health does not convert Villarreal into an employee of the state, or render his relationship with PRH a personal services contract. While the testimony suggests that PRH billed for services Villarreal rendered and forwarded none of that money to him, that somewhat ambiguous testimony does not provide grounds for concluding that Villarreal was operating under a personal services contract with PRH. Further, that Nicholas would evaluate a doctor who performs services in the hospital suggests merely a desire to monitor the quality of care rendered in the facility. Similarly, the requirement that Villarreal treat the patients assigned to him is unpersuasive, as that requirement was a function of his employment with Shawnee Mental Health Center. In the final analysis, the testimony as a whole highlights the very marked distinction in Villarreal's working circumstances as compared with those of the other doctors who have personal services contracts with PRH.

While Villarreal presented testimony that all negotiations prior to the agreement included discussions of his immunity under R.C. 9.86, those discussions were never incorporated into the agreement. Indeed, a clause in the agreement indicates that the agreement reflects all the terms agreed to between the parties. Without a specific provision granting such immunity, we are unable to conclude on this record that the trial court erred in finding that Villarreal was not an employee of and was not working under a personal services contract with the state.

For the foregoing reasons, appellants' single assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DESHLER and CLOSE, JJ., concur.