# BALLENGEE

## v.

## OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

Court of Claims of Ohio.

No. 95–09434.

Decided June 20, 1996.

*Vincent J. Lodico,* for plaintiff.

*Betty D. Montgomery,* Attorney General, *Susan M. Sullivan* and *J. David Goodman,* Assistant Attorneys General, for defendant.

FRED J. SHOEMAKER, Judge.

On February 1, 1993, Albert Ohler ("Albert") filed a wrongful death action in this court under case No. 93–01924 against the Department of Rehabilitation and Correction ("DRC"). The claim alleged malpractice in the diagnosis and treatment of rectal cancer that had been contracted by Charles Ohler ("Charles"), the brother of Albert and an inmate at the Orient Correctional Institution. During the initial stages of discovery in that case, it was determined that three of the doctors who treated Charles were contract employees of the Annashae Corporation ("Annashae"). Thereupon, Albert filed a complaint in the Cuyahoga County Court of Common Pleas against Annashae and Drs. Cullen, Coleman and Ballengee, individually. Service of summons was not perfected on Dr. Coleman.

Annashae answered the complaint and filed a third-party complaint against DRC. Drs. Ballengee and Cullen also filed "cross-claims" (in reality, third-party complaints) against DRC. Annashae and Drs. Ballengee and Cullen requested a declaratory judgment against DRC for indemnification and a determination that the doctors and Annashae were employees of the state of Ohio. DRC filed a motion to dismiss for lack of subject matter jurisdiction over the claim. The Cuyahoga County Court of Common Pleas denied the motion.

The Cuyahoga County Court of Common Pleas rejected DRC's argument that pursuant to R.C. 2743.02(F), the Court of Claims has original exclusive jurisdiction to determine whether Annashae and its doctors were state employees. The Cuyahoga County Court of Common Pleas found "that defendants Annashae, Dr. Ballengee and Dr. Coleman were officers or employees of the State of Ohio within the meaning of R.C. 109.36." The Cuyahoga County Court of Common Pleas then decided that the Court of Claims must decide whether Dr. Ballengee was entitled to immunity pursuant to R.C. 9.86. Consequently, on September 6, 1995, Dr. Ballengee filed this suit in the Court of Claims.

This court held an evidentiary hearing. The following findings of fact noted in this opinion have been established by a preponderance of the evidence.

### FINDINGS OF FACT

In 1980, Annashae was incorporated in the state of Ohio under the "General Corporation Act of Ohio," R.C. Chapter 1701, not the Professional Associations Act, R.C. Chapter 1785. The articles of incorporation specifically state that "nothing herein authorizes the company to engage in the practice of medicine." Annashae provided consulting services to hospital administrators and ran a physician staffing service. Annashae provided physician staffing services to state agencies such as DRC and the Ohio Department of Mental Health, and to local government entities that operate local mental health facilities and local hospitals.

Annashae began entering into contracts with DRC in 1984. Between 1987 and 1991, Annashae entered into two separate contracts with Orient Correctional Institution ("OCI") to provide physicians. The first purchase service contract was signed on August 11, 1987. The work commenced on September 11, 1987, and continued until June 30, 1991. The second contract, like the first, required Annashae to provide two staff physicians to OCI.

Under these contracts, Annashae agreed to provide the physicians at a set hourly rate for a two-year period. When Annashae signed these contracts, it did not know the specific doctors it would be providing to OCI.

Annashae then entered into independent contracts with its staff physicians. DRC had no involvement in negotiating the terms of these contracts. Annashae

paid its doctors directly, in a lump sum with no taxes or benefits charges withheld. Annashae paid the staff physicians based either upon an hourly rate or in accordance with other arrangements negotiated with the doctor. Annashae made a profit on these contracts with the state. OCI did not assign the Annashae staff physicians, nor did it have the authority to terminate a doctor. If OCI did not want a particular Annashae staff physician assigned, OCI was required to contact Annashae and Annashae would not schedule him. However, the doctor could continue to work for Annashae.

Dr. Stuart F. Ballengee, D.O., ended his private practice and signed his first contract with Annashae on September 29, 1989. He worked for Annashae until March 1991. His contract stated that he was an independent contractor of Annashae. Dr. Ballengee was assigned to the OCI for a year and a half until his contract ended. At that time, Annashae had an opening for a medical director at Marion Correctional Institution. Dr. Ballengee assumed that position and signed a new contract with Annashae, under which he also provided coverage on weekends at the Mansfield and London Correctional Institutions. In early 1992, he served as the acting medical director at the Mansfield Correctional Institution for three months, then left Annashae and accepted a job closer to his home. He worked at the prison hospital to which Annashae assigned him and received a flat rate per month from Annashae. At no time was he ever paid by the state of Ohio. He never signed a personal services contract with the state of Ohio during the time he provided services to Annashae, nor did he make contributions to any state retirement fund or receive any state benefits. Dr. Ballengee never saw the contract that Annashae had signed with the state.

While Drs. Cullen and Ballengee were at OCI, Dr. Herbert Estes was the medical director. In the first few weeks of each physician's assignment at OCI, Dr. Estes provided each with procedural instructions as to where and when inmates would appear for sick call and how to procedurally operate the sick call. However, the doctors made their own medical decisions concerning their inmate patients and prescribed medicine or medical devices. They personally ordered tests or surgery. Because of budgetary constraints, the doctors were limited in their ability to choose brand name medical devices or medications.

Both Drs. Cullen and Ballengee had the authority to determine if an inmate patient required hospitalization. In order to hospitalize an inmate out of the prison facility, the doctor had to obtain the approval of the medical director and the warden. This requirement was made for security reasons to control the movement of an inmate and not for medical reasons. The only restrictions placed upon Annashae's doctors in performing their medical duties were for budgetary and security reasons.

Annashae filed a third-party complaint against DRC alleging that DRC should indemnify it for any judgment against it in plaintiff's medical malpractice claim. Annashae fashioned its action as a declaratory judgment, requesting the court to find that DRC was required, pursuant to the contract, to indemnify it, even though the Cuyahoga County Court of Common Pleas lacked jurisdiction to order the state to pay money damages.

The Cuyahoga County Court of Common Pleas held that Annashae was seeking equitable relief because it was attempting to require DRC to meet its contractual obligations. The court relied upon the law set forth in *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.* (1991), 62 Ohio St.3d 97, 579 N.E.2d 695. The Supreme Court, in *Ohio Hosp. Assn.*, found that the refusal of a party to perform under a contract is a breach of contract; the relief for such cause of action is monetary damages. *Ohio Hosp. Assn.* dealt with contractual relief, albeit coupled with an equity claim, and the Supreme Court of Ohio found that the Court of Claims, not the common pleas court, had jurisdiction and held, "The Court of Claims has exclusive, original jurisdiction in all civil suits for money damages even where ancillary relief such as an injunction or declaratory judgment is sought." *Id.*, 62 Ohio St.3d at 103, 579 N.E.2d at 699–700. The plaintiff in *Ohio Hosp. Assn.*, sought to enforce, among other things, its contractual rights. By so doing, plaintiff invoked the exclusive, original jurisdiction of the Court of Claims.

Additionally, both Drs. Ballengee and Cullen filed "cross-claims" against DRC for indemnification for the medical malpractice action filed by plaintiff. They also requested the court to award them costs, expenses, and attorney fees for their defense of the medical malpractice claim. A claim for indemnification is a claim for money damages. Although DRC filed a motion to dismiss these claims, the Cuyahoga County Court of Common Pleas rejected DRC's arguments, finding there existed "no pleading defect in the cross-claims."

## CONCLUSIONS OF LAW

Actions for money damages against the state can only be brought in the Court of Claims. R.C. 2743.03; *Friedman v. Johnson* (1985), 18 Ohio St.3d 85, 18 OBR 122, 480 N.E.2d 82; *Racing Guild of Ohio, Local 304 v. State Racing Comm.* (1986), 28 Ohio St.3d 317, 28 OBR 386, 503 N.E.2d 1025.

Drs. Cullen and Ballengee also included a request for equitable relief, *e.g.*, declaratory judgment. Drs. Cullen and Ballengee requested the court to find the state responsible for any judgment against them and their attorney fees and costs in the medical malpractice claim because they detrimentally relied on their relationship with the Department of Rehabilitation and Correction. They also claimed to be third-party beneficiaries of the contract between the state and Annashae. In *Friedman, supra,* the court held that common pleas courts had no

jurisdiction over matters involving money claims against the state, even when other types of relief were sought in the same action. As the court noted:

"The Court of Claims was created to become the sole trial-level adjudicator of claims against the state, with the narrow exception that specific types of suits that the state subjected itself prior to 1975 could be tried elsewhere as if the defendant was a private party. To permit the court of common pleas to have jurisdiction over claims such as the one herein would contravene this purpose. For example, any party wishing to avoid the Court of Claims, for whatever reason, would simply have to attach a prayer for declaratory relief onto his request for monetary damages or injunctive relief. This type of 'forum-shopping' is not what was envisioned when the Court of Claims was established; rather, the exception to its exclusive jurisdiction should be strict and narrow." *Id.*, 18 Ohio St.3d at 87–88, 18 OBR at 124, 480 N.E.2d at 84.

■ In a subsequent decision, the Supreme Court affirmed *Friedman* by stating in a footnote that the Court of Claims has original and exclusive jurisdiction over actions involving money damages. *Racing Guild, supra.* It is evident from the Supreme Court determination in both *Friedman* and *Racing Guild* that, notwithstanding the common pleas court's jurisdiction to adjudicate declaratory or injunctive relief against the state standing alone or combined with other forms of equitable relief, attaching a prayer for monetary relief places the action properly before the Court of Claims.

■ The doctors were asking for monetary relief from the state of Ohio and the Department of Rehabilitation and Correction. Although they requested a declaratory judgment, this does not permit any part of this action to remain within the jurisdiction of the common pleas courts. R.C. 2743.03(A) is very specific in that once a claimant requests monetary relief, even if there is also a request for declaratory judgment, the Court of Claims has exclusive, original jurisdiction to hear both matters.

Since the Cuyahoga County Court of Common Pleas lacked jurisdiction over the subject matter, any ruling in that action is void *ab initio*, and its ruling that Annashae and Drs. Ballengee and Coleman are state employees has no legal effect. *Res judicata* cannot lie when a court lacks subject matter jurisdiction.

Annashae and Drs. Ballengee, Cullen and Coleman successfully requested the Cuyahoga County Court of Common Pleas to find that they were state employees. However, the Court of Claims is the only court with jurisdiction to make that determination. The Supreme Court of Ohio specifically found in *State ex rel. Sanquily v. Lucas Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 78, 573 N.E.2d 606, that:

"R.C. 2743.02(F) vests *exclusive* original jurisdiction in the Court of Claims to determine whether Sanquily is immune from suit. *Until that court decides whether Sanquily is immune, the common pleas court is totally without jurisdiction over the litigation against him.* Accordingly, Sanquily is entitled to a writ prohibiting the common pleas court from exercising jurisdiction over the merits of the case until the Court of Claims has decided whether he is entitled to personal immunity under R.C. 9.86 and whether the common pleas court has jurisdiction over the malpractice action." (Emphasis added.) *Id.* at 80–81, 573 N.E.2d at 609. See, also, *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 287, 595 N.E.2d 862, 865–866; *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 596 N.E.2d 432.

Therefore, the Cuyahoga County Court of Common Pleas lacked subject matter jurisdiction to determine whether Annashae and Drs. Ballengee, Cullen and Coleman were state employees and its ruling is void *ab initio.*

 Furthermore, Annashae is not a "state employee" as defined by R.C. 109.36(A).

At the time in question (1989–1990), R.C. 109.36 provided:

"(A) 'Officer or employee' means any person who, at the time a cause of action against him arises, is serving in an elected or appointed office or position with the state; is employed by the state; or *is rendering medical,* nursing, dental, podiatric, optometric, physical therapeutic, psychiatric or psychological *services* pursuant to a personal services contract with a department, agency, or institution of the state. Officer or employee does not include any person elected, appointed, or employed by any political subdivision of the state." (Emphasis added.)

Annashae does not have a license to practice medicine, nor does it practice medicine. Therefore, Annashae could not be "rendering medical * * * services." Annashae is not involved in any of the medical decisions made by the staff physicians at the prisons. Annashae's staff physicians are independent contractors of the corporation. Annashae provides a physician placement service. It contracts with doctors in order to place them at various private and public hospitals/institutions. Thus, Annashae does not fall under the definition of "employee" in R.C. 109.36(A).

R.C. Chapter 1701, General Corporation Law, precludes the formation of a corporation under this chapter for the purpose of practicing medicine or any other profession. Specifically, R.C. 1701.03 states that a "corporation may be formed for any purpose or purposes, other than for carrying on the practice of any profession * * *." Physicians, however, may form a corporation, under the Professional Associations Act, R.C. Chapter 1785, for the purpose of rendering

medical services. Each shareholder, however, must be a physician licensed to practice medicine in Ohio. R.C. 1785.02.

Annashae is a general corporation, incorporated under R.C. Chapter 1701. Its articles of incorporation specifically state that "nothing herein authorizes the company to engage in the practice of medicine." If Annashae were rendering medical services, it would be engaged in the illegal practice of medicine.

R.C. 109.36(A) requires the person rendering medical services to be doing so pursuant to a personal service contract. Dr. Ballengee was not under contract with OCI. Dr. Ballengee never signed a contract with the state. There is no privity of contract between Dr. Ballengee and the state. No money changed hands between the staff physicians and the state. The physicians were paid by Annashae. The contract between Annashae and OCI specifically states that this agreement is made between Annashae Corporation, hereinafter referred to as the independent contractor, and Orient Correctional Institution. The only signature on the contract is that of Chris Pasiadis, Annashae's vice president. Without a contract or consideration, no personal services contract exists between OCI or DRC and the doctors.

■ The case law does not support a finding that Dr. Ballengee is a state employee. The Franklin County Court of Appeals addressed a similar issue in *Nichols v. Villarreal* (1994), 94 Ohio App.3d 173, 640 N.E.2d 557. Dr. Villarreal claimed that he was a state employee because his employer, Shawnee Mental Health Center, had a personal services contract with Portsmouth Receiving Hospital, a hospital operated by the Ohio Department of Mental Health. Pursuant to this contract, Dr. Villarreal rendered medical services at Portsmouth Receiving Hospital. As in the instant case, Dr. Villarreal did not have a personal services contract with the state. He performed his duties pursuant to a contract between his employer and the Department of Mental Health. Similarly, Dr. Ballengee performed his duties pursuant to a contract between OCI and Annashae. The Franklin County Court of Appeals found that Dr. Villarreal was not an employee and not working under a personal services contract with the state. The same reasoning and result apply in this case.

Plaintiff stated in his trial brief, referring to *Nichols, supra*, "while the decision of the court of appeals is probably wrong, the facts in that case are distinguishable." Actually, the facts in this case are substantially more weak from the plaintiff's viewpoint than those in *Nichols*. Furthermore, in *Smith v. Ohio State Univ. Hosp.* (Apr. 16, 1996), —— Ohio App.3d ——, —— N.E.2d ——, Franklin App. Nos. 95API08–1035 and 95API08–1055, 1996 WL 188708, the Tenth Appellate District held:

"Under the facts of this case, Dr. York was not functioning under a personal services contract with a department, agency or institution of the state, and was not a state employee as defined by R.C. 109.36. His services to Mr. Smith were the result of his employment with DSC and DSC was not shown in the trial court to be a department, agency or institution of the state. If he had a personal services contract with anyone, the contract was with DSC. Dr. York was not therefore entitled to immunity." See, also, *York v. Univ. of Cincinnati Med. Ctr.* (Apr. 23, 1996), Franklin App. No. 95API09–1117, unreported, 1996 WL 200324.

The common pleas court never mentioned *Nichols, supra,* in the opinion and cited *Tschantz v. Ferguson* (1991), 57 Ohio St.3d 131, 566 N.E.2d 655, as authority. However, the Supreme Court, in *Conley v. Shearer, supra,* overruled *Tschantz.*

In *Klingel v. Ohio State Univ. Hosp.* (1995), 72 Ohio Misc.2d 25, 655 N.E.2d 457, this court held that two Ohio State University physicians were outside the scope of their employment when they performed medical services for a privately owned medical services corporation. Both physicians were compensated by the corporation and were separately covered by liability insurance.

In the case *sub judice,* Dr. Ballengee was under contract with the Annashae Corporation, which is privately owned and which has no connection with the state of Ohio. Annashae paid the doctors for the work they performed for Annashae. The contract that Drs. Ballengee and Cullen signed with Annashae identified them as independent contractors of the corporation. Dr. Ballengee's contract with Annashae specifically provided in Section 7: "The company will cover the expense of professional liability insurance related to the services provided on notice that he should retain his own legal counsel for suit because he may or may not be covered by the state or the Annashae Corporation."

Annashae and its doctors allege that they were under the direction of OCI and were therefore state employees. OCI did not control the doctors. OCI had the right to screen the applicant doctors, and Annashae physicians had to live by the rules of the institution. Since security is the first priority of a prison, the screening of physicians is reasonable and necessary. Staff physicians were only minimally restricted in doing their jobs by basic budgetary and security restraints, and on a day-to-day basis the doctors had full authority to practice medicine as they deemed proper. OCI's interference, if any, was minimal, and was based merely upon security and financial considerations.

In summary, the facts in this case are very similar to those in *Nichols v. Villarreal.* Dr. Villarreal did not have a personal services contract with the state. Dr. Ballengee performed his duties, as did Dr. Villarreal, pursuant to a contract between the state and his employer. The reasoning and holding in *Nichols* is

binding upon this court. Accordingly, Dr. Ballengee is not a state employee and not entitled to be indemnified and reimbursed for his attorney fees.

The statutes, case law, and facts of this case demonstrate that neither Annashae nor its staff physicians were employees of the state and entitled to immunity. The Cuyahoga County Court of Common Pleas lacked subject matter jurisdiction in *Ohler v. Annashae,* Cuyahoga C.P. No. 259034, and, therefore, its ruling on whether Annashae and Drs. Ballengee and Coleman are state employees is void *ab initio* and is not *res judicata.*

The court held an evidentiary hearing in the above-captioned case. The court finds that the Cuyahoga County Court of Common Pleas lacked jurisdiction to determine whether Stuart F. Ballengee, D.O., and Annashae Corporation were state employees. The court further finds that Stuart F. Ballengee, D.O., was not a state employee pursuant to R.C. 109.36; therefore, he is not entitled to indemnification for attorney fees as demanded in his complaint. This determination disposes of all issues raised in plaintiff's complaint.

Judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk is directed to serve upon all parties notice of this judgment and its date of entry upon the journal.

*Judgment accordingly.*