BERGER et al., Appellants,

v.

DARE et al., Appellees.

[Cite as *Berger v. Dare* (1994), 99 Ohio App.3d 103.]

Court of Appeals of Ohio,
Warren County.

No. CA94–01–016.

Decided Dec. 19, 1994.

*Young & Hubbell* and *Fred C. Hubbell,* for appellants.

*Gray, Duning & Dunlap* and *J. William Duning,* for appellees.

KOEHLER, Judge.

Plaintiff-appellant, Carl J. Berger, appeals an order of the Warren County Court of Common Pleas denying his request for a judicial accounting and distribution of the assets of a junkyard business.

In 1966, appellant and defendants-appellees, William Dare and James Dare, purchased Clarksville Auto Parts, a junkyard business located on a one-hundred-two-acre parcel of land, for $62,000. The purchase price included the junkyard business, its inventory and equipment, the one hundred two acres of land (some of which was farmland), and some buildings, including a house. Each person contributed $10,000 in cash toward the purchase. The balance of $32,000 was financed by a mortgage loan. At the time of the purchase, appellant and appellees agreed to each pay one third of the monthly mortgage payment (or $106) until the junkyard business was profitable enough to pay the mortgage payments without additional contributions of the parties. This eventually oc-

curred in 1971. From 1966 to 1992, all property taxes and insurance costs were paid from the revenues of the junkyard business.

From 1966 to 1972, appellee James Dare operated the junkyard business by himself. From 1973 to 1992, both appellees operated the business. Appellant never actively or otherwise participated in the operation of the business. From 1966 to 1991, the junkyard business filed partnership tax returns with schedules K–1. These tax returns showed that appellant and appellees each had a profit sharing of 33⅓ percent. The returns also indicated each party's percentage of time devoted to the business: 5 percent for appellant, 100 percent for appellee William Dare, and 100 percent for appellee James Dare.

From 1966 to 1991, appellant conducted a farming operation on thirty to fifty acres of the property purchased by the three parties in 1966. Appellant kept all income, including soil bank payments, from the farm business during the years 1966 through 1991. Appellees were never involved in the farming operation.

On August 23, 1990, appellant and his wife, Alma Jean Berger, filed a complaint in the trial court for partition of the real estate purchased in 1966 with a request for a judicial accounting and distribution of the assets of the junkyard business. Appellees filed their answer as well as a counterclaim for a judicial accounting of the farm business.

On March 8, 1991, the trial court ordered partition of the real estate. However, upon joint motion of the parties, the real estate was sold as one parcel at a public auction on April 27, 1992 for $174,000. Each party received one third of the sale price, both appellees by assuming ownership of the property, appellant by receiving $58,000 in cash. Following the sale, appellant ceased the farming operation and appellee William Dare ended his participation in the operation of the junkyard business, leaving appellee James Dare to operate the junkyard as a sole proprietorship.

The issue of judicial accounting and distribution was tried to the court on December 8, 1993. In a judgment entry filed on January 3, 1994, the trial court denied requests for accounting and distribution by both appellant and appellees, finding that appellant was not a partner of either appellee in either the junkyard business or the farm business.

Appellant timely filed this appeal and raises the following assignments of error:

Assignment of Error No. 1:

"The trial court erred to the prejudice of plaintiff-appellants [*sic*] in failing to find that a partnership between the plaintiff-appellants and the defendant-appellees [*sic*] was established, thus denying plaintiff-appellant's request for an accounting and apportionment of partnership assets."

Assignment of Error No. 2:

"The trial court erred to the prejudice of plaintiff-appellants [*sic*] in failing to find that a partnership by estoppel between the plaintiff-appellants and the defendant-appellees [*sic*] was established, thus denying plaintiff-appellant's request for an accounting and apportionment of partnership assets."

In his first assignment of error, appellant argues that the trial court's determination that he was not appellees' partner in the junkyard business was against the manifest weight of the evidence.

 It is well established that when a judgment is supported by some competent, credible evidence going to the essential elements of the case, the judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Moreover, in reviewing a trial court's decision, an appellate court must give due deference to the trial court's findings, as the trial judge is best able to observe the witnesses and use these observations in weighing the credibility of the testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." R.C. 1775.05(A). R.C. 1775.06 lists certain rules to help determine the existence of a partnership. That section states in part:

"(B) Joint tenancy, tenancy with a right of survivorship, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of property.

"(C) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

"(D) The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(1) As a debt by installments or otherwise;

"(2) As wages of an employee or rent to a landlord[.]"

 Participation in the profits of a business, though cogent evidence of a partnership, is not necessarily dispositive of the question. The evidence must show that the persons taking the profits shared them as principals in a joint business, in which each has an express or implied authority to bind the other. *Goubeaux v. Krickenberger* (1933), 126 Ohio St. 302, 185 N.E. 201, citing *Harvey v. Childs* (1876), 28 Ohio St. 319.

■ At trial, appellant first testified about two $1,000 checks that he had written to the junkyard business. Appellant testified that one check, dated November 14, 1969, was to pay rent for thirty-one acres, while the other check, dated August 7, 1971, was to pay for his share in the junkyard business inventory. Appellant testified that the latter check was not a loan and that he expected to be paid back. Appellant also testified about the tax returns filed by the junkyard business, stating that he had never asked for or seen them, but that he had instead received K–1 forms from the junkyard business. Appellant testified that, although the K–1 forms indicated that his earnings totaled $18,879 from 1966 to 1991, he had never received any money from the junkyard business.[1] Appellant thought that his earnings were put back into the junkyard business. With regard to the farming operation, appellant testified as follows:

"Q. [By Fred C. Hubbell, counsel for appellant] * * * What was your agreement as to the profits of that farming operation?

"* * *

"A. Oh, the farm? I took all the money.

"* * *

"Q. Mr. Berger, according to my calculations of what you gave me, that adds up to $33,206 [from 1967 to 1991].

"A. Right.

"Q. All right. And that's the money that you received from this farming operation?

"A. Yes.

"Q. Did any of that money go to either Jim Dare or William Dare?

"A. No.

"Q. All right. Why did it not?

"A. Because I told them I'd take the farm and farm it and put my, what money I had coming from the junkyard I'd put it back into the junkyard.

"Q. So the agreement, as far as you were concerned, the farming operation it was all yours and none would go to the Dares?

"A. Right."

Finally, with regard to the junkyard business, appellant testified that he did not work in the business and that he was never involved in the day-to-day

---

1. The same K–1 forms indicate that for the same period William Dare's earnings totaled $145,751, while James Dare's earnings totaled $190,173.

management of the business, but that this was his understanding of his relationship with appellees. Appellant further testified that he never had access to or control of the business books and that he could not sign checks for the business. Appellant also testified that he never had control of the business's income and expenses.

Appellee William Dare testified that the $145,751 he had received from the junkyard business from 1966 to 1991 was not his share of the business profits but rather wages. William Dare testified he had never received any profit from the junkyard business. William Dare then testified about two checks payable to appellant from the junkyard business, one for $900 dated December 14, 1976, the other for $682 dated June 6, 1981. William Dare explained that when the junkyard business contributed to appellant's increase in income tax, the business paid for the increase as shown by the two checks. Finally, William Dare testified that the parties' agreement was that the junkyard business and the farming business would be run separately. William Dare further testified that he never considered appellant as having a one-third interest in the junkyard business.

Appellee James Dare testified that the $190,173 he had received from the junkyard business from 1966 to 1991 was all wages. With regard to the business tax returns, James Dare agreed that they showed that appellant owned a one-third interest in the junkyard business. James Dare also testified that, although the tax returns indicated that appellant devoted five percent of his time to the business, appellant had never devoted five percent of his time to the business. Finally, James Dare testified that the parties' agreement was that appellant would run the farming business and that appellees would run the junkyard business.

With regard to the November 14, 1969 $1,000 check from appellant to the junkyard business, both appellees disagreed with appellant's testimony. Both appellees testified that the check was not to pay rent for thirty-one acres, since appellant had never paid rent for his farming business, but rather to pay for a 1969 Mustang appellant bought for his wife.

A review of the record reveals that some competent and credible evidence supports the trial court's judgment. The record shows that there was no written partnership agreement, or any strong evidence of an oral partnership agreement between appellant and appellees. The record also shows that while appellant considered himself a partner of appellees in the junkyard business, he never discussed the business with appellees, did not share in the losses, never filed a partnership tax return, and never contributed any services or participated in the operation of the junkyard business. With regard to the profits, while the record shows that appellant's earnings totaled $18,879 in twenty-five years, there is no evidence that appellant had an express or implied authority to bind appellees with

regard to the junkyard business. See *Goubeaux, supra.* Furthermore, with regard to the tax returns, the trial court stated:

" * * * We are aware that each year a federal tax return was filed for the junk car business listing Carl Berger as a partner. Obviously, this was merely a technicality and was understood as such by all parties. The evidence shows that each year, if any tax liability was incurred by Carl Berger as the result of said partnership tax return, William and James Dare reimbursed Carl Berger for the amount of said tax."

As a reviewing court, we should give due deference to the trial court's findings. *Seasons Coal Co., supra.* We accordingly conclude that the trial court's determination that appellant was not a partner of appellees in the junkyard business was not against the manifest weight of the evidence. Appellant's first assignment of error is therefore overruled.

In his second assignment of error, appellant argues that the trial court erred in failing to find that a partnership by estoppel existed between appellant and appellees. Appellant argues that R.C. 1775.03(B) mandates courts to consider the law of estoppel.

At the outset, we note that while R.C. 1775.03(B) states that the law of estoppel applies to R.C. Chapter 1775, the Uniform Partnership Law, it does not require Ohio courts to consider the law of estoppel whenever the evidence does not establish the existence of a partnership agreement. Furthermore, appellant's second assignment of error asserts an issue not raised or addressed in the trial court. It is rudimentary that questions neither raised nor passed upon by the trial court will not be ruled upon by this court. See *In re Adoption of McDermitt* (1980), 63 Ohio St.2d 301, 17 O.O.3d 195, 408 N.E.2d 680. Appellant's second assignment of error is therefore overruled.

*Judgment affirmed.*

WALSH, P.J., and KEEFE, J., concur.

JOHN W. KEEFE, J., retired, of the First Appellate District, sitting by assignment.