This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, James K. McCulty, appeals from his convictions in the Wayne County Municipal Court for driving while under the influence of alcohol and operating a motor vehicle without a valid license. We affirm.
On June 2, 2001, Defendant was issued a citation for the following violations: (1) driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and (A)(3); (2) operating a motor vehicle without a valid license, in violation of R.C. 4507.02(D)(2); and (3) permitting an unlicensed driver to operate a motor vehicle, in violation of R.C. 4507.02(A)(2). A bench trial followed. After the State's case-in-chief, Defendant made a Crim.R. 29 motion for acquittal, which the trial court granted as it pertained to the third violation, permitting an unlicensed driver to operate a motor vehicle. The court found Defendant guilty on the remaining violations and sentenced him accordingly. Defendant timely appeals raising two assignments of error for review, which we have rearranged for ease of review.
 ASSIGNMENT OF ERROR II The trial court's verdict was against the manifest weight of the evidence.
In his second assignment of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that his convictions for driving while under the influence of alcohol and operating a motor vehicle without a valid license were contrary to the manifest weight of the evidence. We disagree.
"[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3, citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Furthermore, the evaluation of the weight to be given to the evidence and evaluation of the credibility of the witnesses are functions primarily reserved for the trier of fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4.
Defendant was found guilty of driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and (A)(3), which state in pertinent part:
 No person shall operate any vehicle * * * within this state, if any of the following apply:
The person is under the influence of alcohol[;]
* * *
 (3) The person has a concentration of ten-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath[.]
Defendant was also found guilty of operating a motor vehicle without a valid license, in violation of R.C. 4507.02(D)(2). R.C. 4507.02(D)(2) provides in relevant part that:
 No person, whose driver's * * * license or permit * * * has been suspended under [R.C. 4507.16(B)], shall operate any motor vehicle upon the highways or streets within this state during the period of suspension.
At trial, Ohio State Trooper Matt Johnson explained the events which led up to Defendant's arrest. Specifically, Trooper Johnson testified that on June 1, 2001, he arrested Jeffrey Gospendenski ("Gospendenski") for driving while under the influence, drove him to his home, and instructed him that he was not permitted to retrieve his car. Trooper Johnson further testified that shortly after driving Gospendenski home, he saw Gospendenski in the passenger's seat of a gold Corsica. Trooper Johnson stated that he did not know the identity of the driver, but was able to discern that the driver was wearing a white shirt and had facial hair. He asserted that the unidentified driver was Defendant. Trooper Johnson explained that he again encountered the gold Corsica; however, it was now followed by Gospendenski's car. At that moment, he "hit [his] spotlight" and saw Gospendenski driving the gold Corsica and Defendant driving Gospendenski's car. He said that he proceeded to pull over Gospendenski and motioned Defendant to pull over; however, Defendant did not heed his motion. As a result of Defendant's failure to stop, Trooper Johnson explained that he called the Doylestown Police Department and informed the department as to Defendant's location. Trooper Johnson stated that the Doylestown police officers found Defendant "[walking] from the car to [his] house." After the Doylestown police officers located Defendant, Trooper Johnson maintained that Defendant voluntarily accompanied the officers. Trooper Johnson declared that when he encountered Defendant, he smelled the odor of an alcoholic beverage and noted that his eyes were bloodshot. Lastly, he stated that Defendant's driver's license was suspended.
Ohio State Trooper Mark Haines testified that Defendant admitted that he had been drinking that night. Trooper Haines further testified that when he approached Defendant in the holding cell there was a "moderate" to "strong" odor of an alcoholic beverage. He also stated that Defendant's eyes were bloodshot. Trooper Haines indicated that he conducted various sobriety tests on Defendant. He explained the results of these tests as follows: (1) on the walk and turn test, Defendant exhibited four clues out of a possible eight clues of intoxication; (2) on the horizontal gaze nystagmus, Defendant exhibited five clues out of a possible six clues of intoxication; and (3) on the one leg stand test, Defendant exhibited zero clues of intoxication. He additionally stated that Defendant's blood alcohol content was .108. Finally, Trooper Haines concluded that Defendant was under the influence of alcohol and placed Defendant under arrest.
After the State rested, Defendant decided to testify. Defendant admitted that he was drinking on June 1, 2001; however, he denied driving that evening. Defendant explained that he had not driven a car since he was issued a ticket for driving under the influence, which occurred approximately six to eight months earlier. Furthermore, he explained that he could not drive Gospendenski's car because it was a standard shift and he does not know how to drive that type of car. Defendant maintained that he does not own a gold Corsica, but acknowledged that his girlfriend owns a gold Corsica. Lastly, Defendant testified that the police officers are confused as to the identity of the driver. In particular, Defendant believes that the police officers have confused him with his brother as the driver of the gold Corsica.
In the case sub judice, the judge had the opportunity to observe the witnesses' testimony and weigh the credibility of the testimony; therefore, we must give deference to the judge's decision. See Berger v.Dare(1994), 99 Ohio App.3d 103, 106. Upon careful review of the testimony and evidence presented at trial, we hold that the judge did not act contrary to the manifest weight of the evidence in convicting Defendant for driving while under the influence of alcohol and operating a motor vehicle without a valid license. Accordingly, Defendant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR I [Defendant] was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution due to the failure of trial counsel to file a [m]otion to [s]uppress.
In his first assignment of error, Defendant argues that he was denied effective assistance of counsel when his attorney failed to file a motion to suppress. Defendant's argument is not well taken.
The United States Supreme Court enunciated a two-part test to determine whether counsel's assistance was ineffective as to justify a reversal of sentence or conviction. Strickland v. Washington (1984), 466 U.S. 668,687, 80 L.Ed.2d 674, 693. "First, the defendant must show that counsel's performance was deficient." Id. To show the deficiencies in counsel's performance, a defendant must prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment." Id. Second, a defendant must establish that counsel's deficient performance resulted in prejudice to the defendant which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." See State v. DeNardis (Dec. 29, 1993), Medina App. No. 2245, unreported, at 4.
The Sixth Amendment does not require defense counsel to file a motion to suppress in every case. Kimmelman v. Morrison (1986), 477 U.S. 365,384, 91 L.Ed.2d 305, 325; State v. Madrigal (2000), 87 Ohio St.3d 378,389. Furthermore, the Sixth Amendment does not require defense counsel to file a meritless motion to suppress in an effort to avoid a charge of ineffective assistance of counsel. State v. Robinson (1996),108 Ohio App.3d 428, 433.
A strong presumption exists that a licensed attorney is competent and that the challenged action reflects sound trial strategy within the range of reasonable professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 142. Therefore, "[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." State v.Carter (1995), 72 Ohio St.3d 545, 558. In addition, "[w]here the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." Statev. Gibson (1980), 69 Ohio App.2d 91, 95.
In the case sub judice, Defendant contends that his arrest was improper and, therefore, the evidence obtained as a result of his arrest should be suppressed. However, the record does not contain evidence which would justify the filing of a motion to suppress. Specifically, the record indicates that Defendant voluntarily accompanied the police officers to the police station where he underwent an assortment of sobriety tests. After Trooper Haines conducted the tests and concluded that Defendant was intoxicated, he arrested Defendant. Consequently, we cannot say that the failure of Defendant's trial counsel to challenge the arrest amounted to ineffective assistance of counsel. Accordingly, Defendant's first assignment of error is overruled.
Defendant's assignments of error are overruled. The convictions of the Wayne County Municipal Court are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
BAIRD, J., CARR, J. CONCUR.