This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Thomas and Susan Lavery, appeal from the judgment of the Summit County Court of Common Pleas, Juvenile Division, which granted the motion of Appellee, Summit County Children Services Board ("CSB"), to place Kathleen Lavery ("Kathleen"), Appellants' daughter, in a planned permanent living arrangement. We affirm.
On April 4, 2000, CSB filed a complaint against Appellants alleging that Kathleen was an abused, neglected, and dependent child. Thereafter, the trial court granted emergency temporary custody of Kathleen to CSB. On May 19, 2000, the trial court adjudicated Kathleen an abused, neglected, and dependent child and ordered Kathleen to remain in the temporary custody of CSB. CSB then moved to terminate Thomas Lavery's ("Thomas") visits with Kathleen, which the trial court granted and, consequently, ordered Thomas to have no contact with Kathleen. Subsequently, CSB moved for a planned permanent living arrangement ("PPLA"), pursuant to R.C. 2151.353(A)(5)(a) and (b). Additionally, Susan Lavery ("Susan") moved for legal custody of Kathleen. The trial court granted CSB's motion for a PPLA and denied Susan's motion for legal custody. Appellants timely appeal and raise two assignments of error for review, which we have rearranged for ease of review.
 ASSIGNMENT OF ERROR II "The trial court abused its discretion by considering facts that were not presented in evidence and misconstruing the evidence."
In their second assignment of error, Appellants challenge the adequacy of the evidence presented at trial. Specifically, Appellants aver that the trial court's decision was contrary to the manifest weight of the evidence. We disagree.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [jury/trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment/conviction] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment/conviction]." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten (1986), 33 Ohio App.3d 339, 340.
Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
A parent's right to raise his or her children is an essential right. Inre Murray (1990), 52 Ohio St.3d 155, 157, citing Stanley v. Illinois
(1972), 405 U.S. 645, 651, 31 L.Ed.2d 551. However, natural parents' rights and interests are not absolute. In re McDaniel (Feb. 11, 1993), 4th Dist. No. 92CA539. Specifically, a PPLA is a disposition that places the legal custody of a child in a child services agency without terminating parental rights. R.C. 2151.011(B)(36).
Pursuant to R.C. 2151.353(A)(5), a child, who is adjudicated abused, neglected, or dependent, may be placed in a PPLA if the trial court finds, by clear and convincing evidence, that it is in the best interest of the child and one of the following:
 "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with [R.C. 2151.414(D)], and the child retains a significant and positive relationship with a parent or relative.
 "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living."
R.C. 2151.414(D) provides it relevant part:
 "In determining the best interest of a child at a hearing held pursuant to * * * [R.C. 2151.353(A)(5)] or [R.C. 2151.414.(C)], the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
The record indicates that Kathleen was initially removed from Appellants' home because of an altercation that arose due to her second place finish at a spelling bee. Furthermore, the record indicates that Appellants were permitted to visit Kathleen; however, Thomas's visitation rights were terminated because he questioned Kathleen about his criminal trial and he allegedly stalked Kathleen. As such, the trial court issued a no contact order against Thomas for three years.
The evidence presented at the hearing established that a case plan was developed to prepare Appellants for reunification with Kathleen. Specifically, the case plan required Thomas to attend anger management classes, counseling, and a psychological follow-up, and required Susan to attend counseling and any follow-up sessions. Although the record indicates that Appellants attended classes, Nancy Pekar, the social worker, could not say that Appellants gained anything from the classes.
Additionally, Dr. Todd Ivan stated that Thomas suffers from adjustment disorders with mixed emotional features. Dr. Ivan further stated that he does not believe Thomas is violent; however, he acknowledged that he does not have adequate information to make a full risk assessment of Thomas. Similarly, Patricia Millsaps-Linger diagnosed Thomas as suffering with dysthymia, a period of depression for a period exceeding two years, and an adjustment disorder. Although she does not think that Thomas is incapable of parenting, Ms. Millsaps-Linger stated that his ability to parent might be compromised due to his condition. In addition to testifying regarding Thomas's mental disorders, Ms. Millsaps-Linger testified that Thomas admitted to the following actions after the spelling bee: (1) breaking electrical equipment; (2) requiring Kathleen to fast; (3) forcing Kathleen to stay up until 3:00 a.m. to study and do word derivations; and (4) smashing her second place trophy. She also stated that Thomas admitted to hitting Kathleen.
Robin Tener diagnosed Kathleen as suffering from post traumatic stress disorder. Ms. Tener stated that Kathleen has made progress since living with a foster family, and any contact with Thomas would be a tremendous "backwards step" for her in terms of her emotional functioning. She recommended that Kathleen remain in the foster home. Lastly, Ms. Tener explained that Kathleen believed that Thomas controlled Susan and, therefore, was helpless to do anything for her.
Margot Kessler also diagnosed Kathleen as suffering from post traumatic stress disorder. However, she stated that she believes that this disorder is in remission as a result of Kathleen living in a safe environment, namely, the foster home. Ms. Kessler noted that Kathleen's behavior has changed over the course of their counseling sessions. In particular, Ms. Kessler testified that Kathleen is now more assertive and stronger in her decision making skills. Ms. Kessler asserted that Kathleen is aware that Susan is not able to protect her from Thomas. Ms. Kessler acknowledged that she would have concerns if Kathleen had visitation or contact with Thomas or if Susan was granted legal custody of Kathleen. She also noted that Kathleen has a close relationship with her sister, Marjory Lavery ("Marjory"), and her brother, Thomas Lavery. Finally, she stated that Kathleen likes living at her foster home.
Susan Layton, a CSB coordinator, explained that CSB does not want Kathleen to return to Appellants' home and outlined its reasons: (1) Appellants are still married; (2) Appellants reside together; and (3) the existence of the no contact order against Thomas. Moreover, Ms. Layton stated that Susan has been unable to protect Kathleen from emotional abuse in the past and, consequently, she is unsure whether Susan can protect Kathleen from future abuse.
Notwithstanding CSB's concerns, Susan testified that she would be willing to live separate and apart from Thomas, but has no desire to divorce him. Susan further testified that she has never seen Thomas abuse Kathleen and maintained that she does not believe Kathleen's statements regarding the trauma she has endured from Thomas. Nevertheless, she admitted that Thomas has hit her on four separate occasions, which included slapping her in the face and on the shoulder. Susan attributed Thomas's actions to stress. She further explained that when Thomas is under stress he becomes frustrated and overbearing and it can affect his parenting.
In the case sub judice, the judge had the opportunity to observe the witnesses' testimony and weigh the credibility of the testimony; therefore, we must give deference to the judge's decision. Berger v.Dare (1994), 99 Ohio App.3d 103, 106. Upon careful review of the testimony and evidence presented at trial, we hold that the judge did not act contrary to the manifest weight of the evidence in placing Kathleen in a PPLA. Accordingly, Appellants' second assignment of error is overruled.
 ASSIGNMENT OF ERROR I "The trial court erred by finding that Kathleen Lavery should be in a [PPLA] in violation of the Ohio Revised Code, including, but not limited to [R.C.] 2151.415(C)(1) and [R.C.] 2151.419."
In their first assignment of error, Appellants argue that the trial court erroneously found that CSB made reasonable efforts to reunite the family, in accordance with R.C. 2151.419. Additionally, Appellants argue that the trial court failed to find by clear and convincing evidence any of the requirements of R.C. 2151.415(C)(1). Appellants' arguments lack merit.
Decisions regarding child custody matters rests within the sole discretion of the trial court. Miller v. Miller (1988), 37 Ohio St.3d 71,74. See, also, In re Beal (Oct. 5, 1992), 2nd Dist. No. 2903. An appellate court will not reverse a trial court's decision regarding matters of child custody absent an abuse of discretion. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 416-17. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
R.C. 2151.419(A)(1) states in pertinent part:
 "[A]t any hearing held pursuant to * * * [R.C. 2151.353] at which the court * * * continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from the home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount."
The record indicates that CSB did make reasonable efforts to reunite Appellants with Kathleen and prevent the continued removal of Kathleen from Appellants' home. Specifically, CSB generated case plans for both Thomas and Susan, which included anger management classes, counseling, and follow-up sessions. Although Appellants contend that they complied with the case plan and this demonstrates that they should be reunited with Kathleen, the evidence does not indicate that Appellants gained from the experience. As such, we cannot say that the trial court abused its discretion by finding that CSB made reasonable efforts to reunite Appellants with Kathleen.
Pursuant to 2151.415(C)(1), a child may be placed in a PPLA if the trial court finds, by clear and convincing evidence, that it is in the best interest of the child and one of the following:
 "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with [R.C. 2151.414(D)], and the child retains a significant and positive relationship with a parent or relative.
 "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living."
Clear and convincing evidence is the level of proof greater than a "preponderance of the evidence," but less than the certainty of "beyond a reasonable doubt" as required by criminal cases. State v. Schiebel
(1990), 55 Ohio St.3d 71, 74, citing Cross v. Ledford (1954),161 Ohio St. 469. An appellate court reviews the record to determine whether sufficient evidence exists to meet the clear and convincing standard. See Cross, 161 Ohio St. at 477.
Initially, we note that R.C. 2151.415(C)(1)(c) does not apply to the instant case as Kathleen was fifteen during the trial court proceedings.
Turning to the present case, there is evidence that Kathleen is progressing in foster care and reunification with Appellants would be detrimental to that progress. Additionally, the evidence illustrates that Kathleen suffers from psychological problems, which inhibit her ability to function in her family setting. In particular, Kathleen's post traumatic stress disorder is currently in remission and any contact with Thomas would be a "backwards step" in terms of her progress. The evidence also demonstrates that Thomas suffers mental and psychological problems and there exists several concerns regarding his ability to parent safely and effectively at the present time. Moreover, Susan's ability to parent is also questionable considering her failure to recognize any wrongdoing on Thomas's behalf and her continual ties with him and her inability to sever those ties. Finally, Kathleen enjoys living at her foster home and continues to have a significant relationship with Marjory and Thomas Lavery; therefore, adoption is inappropriate.
Consequently, we conclude that Appellants' assertion that the trial court did not find by clear and convincing evidence any of the requirements outlined by R.C. 2151.415 is without merit. Appellants' first assignment of error is overruled.
Appellants' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
BAIRD, J., CARR, J. CONCUR.