This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, London K. Fischer, appeals the decision of the Summit County Court of Common Pleas, which found him guilty of aggravated robbery, aggravated burglary, felonious assault, and having a weapon while under disability, with a gun specification for all counts. This Court affirms.
 I. {¶ 2} On June 25, 2001, appellant was arrested and charged for criminal activity that took place on June 24 and June 25, 2001. On July 9, 2001, a grand jury indicted appellant on three counts of aggravated robbery in violation of R.C. 2911.01(A)(1), two counts of aggravated burglary in violation of R.C. 2911.11(A)(2), and one count of felonious assault in violation of R.C. 2903.11, one count of intimidation of crime victim or witness in violation of R.C. 2921.04. All seven counts had corresponding firearm specifications in violation of R.C. 2941.145. Appellant entered a not guilty plea to all counts in this indictment.
 {¶ 3} On September 19, 2001, the grand jury returned a supplemental indictment adding one count of having a weapon while under disability in violation of R.C. 2923.13. This count also had a corresponding firearm specification in violation of R.C. 294.145. Appellant entered a not guilty plea to this supplemental count.
 {¶ 4} A jury trial commenced on January 29, 2002. During jury selection, the defense counsel raised discrimination issues with respect to the State's two peremptory strikes. The trial court allowed the peremptory strikes. The jury returned its verdict on February 1, 2002, finding appellant guilty of one count of aggravated robbery with a firearm specification, two counts of aggravated burglary with firearm specifications, one count of felonious assault with a firearm specification, and one count of having a weapon while under disability with a firearm specification. The jury found appellant not guilty to two counts of aggravated robbery and one count of intimidation of crime victim or witness.
 {¶ 5} On February 4, 2002, the trial court held appellant's sentencing hearing. The court sentenced appellant to the mandatory 3-year sentence on two of the firearm specifications, to be served consecutively. Appellant was also sentenced to eight years on the aggravated robbery count, eight years on each of the aggravated burglary counts, seven years on the felonious assault count, and one year on the having a weapon under disability count. Appellant's sentences were to run concurrent to one another, but consecutively to the firearm specification counts, for a total of fourteen years in prison.
 {¶ 6} Appellant timely appealed and sets forth five assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR {¶ 7} "APPELLANT'S CONVICTIONS OF AGGRAVATED ROBBERY, AGGRAVATED BURGLARY, AND FELONIOUS ASSAULT REGARDING ERIC PATTEN WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 SECOND ASSIGNMENT OF ERROR {¶ 8} "APPELLANT'S CONVICTION OF AGGRAVATED BURGLARY REGARDING LAIRD STREET WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 THIRD ASSIGNMENT OF ERROR {¶ 9} "APPELLANT'S CONVICTION OF HAVING A WEAPON WHILE UNDER A DISABILITY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In his first three assignments of error, appellant argues that his convictions were against the manifest weight of the evidence. This Court disagrees.
 {¶ 11} In reviewing whether a conviction is against the manifest weight of the evidence, this Court reviews the entire record and "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. Furthermore, "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 12} In the instant case, appellant was convicted of one count of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides that "[n]o person, in attempting or committing a theft offense, *** or in fleeing immediately after the attempt or offense, shall *** [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it [.]" Appellant was also convicted of two counts of aggravated burglary in violation of R.C. 2911.11(A)(2), which provides:
 {¶ 13} "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure *** when another person other than an accomplice of the offender is present, with purpose to commit in the structure *** any criminal offense, if *** [t]he offender has a deadly weapon *** on or about the offender's person or under the offender's control."
 {¶ 14} Appellant was also convicted of one count of felonious assault in violation of R.C. 2903.11, which provides, in relevant part, that "[n]o person shall knowingly *** cause physical harm to another *** by means of a deadly weapon [.]" Lastly, appellant was convicted of one count of having a weapon while under disability in violation of R.C.2923.13, which provides, in relevant part:
 {¶ 15} "[u]nless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm *** if *** the person *** has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."
 {¶ 16} Appellant contends that the manifest weight of the evidence does not support his convictions because there were conflicts in evidence and testimony during his trial. Specifically, appellant challenges the credibility of the victims, as well as the police officers, because all their testimonies are contradictory to appellant's story.
 {¶ 17} At trial, all the victims testified concerning appellant's independent crimes against them. Mr. Tolbert testified that appellant, pointing a gun at Tolbert, forced his way into Tolbert's home, hit Tolbert across his right cheek with the gun, and demanded money and car keys from Tolbert and his girlfriend. Tolbert further testified that appellant cocked the gun and further threatened Tolbert, but fled out the back of the house when Tolbert's neighbor came and knocked on the front door. Tolbert's girlfriend provided testimony that corroborated these events. Both Tolbert and his girlfriend identified appellant as their armed attacker from a photo array later shown to them by Sergeant Callahan.
 {¶ 18} Mr. Patten also testified that appellant, holding a gun, forced his way into Patten's home, pointed the gun at Patten, and demanded money. Patten further testified that appellant cocked the gun and threatened to kill Patten if he did not give appellant money. Patten testified that he tried to reach for appellant's gun when he looked away, a violent struggle ensued between them throughout the house, and appellant started firing the gun. Patten testified that appellant shot him through the right arm, also accidentally shot himself, dropped the gun and fled out of Patten's house. Patten's girlfriend provided testimony that corroborated these events.
 {¶ 19} Over ten police officers, both patrolmen and detectives, testified to their involvement with one or both of the Laird Street and Laffer Street crime scenes. They provided testimony and evidence that corroborated the victims' testimonies concerning the separate attacks by appellant. The State admitted into evidence, from both crime scenes, the following exhibits: an audio tape of the 911 call from Tolbert, a video tape of Patten's house, bullets and casings found in Patten's house, BCI reports, photographs from the Laird Street crime scene and the Laffer Street crime scene, Patten and appellant's bloody clothes, hospital medical records of Patten's wound, the gun used by appellant, GSR kits for both Patten and appellant, and the photo array from which Tolbert and his girlfriend identified appellant as their attacker.
 {¶ 20} Appellant claims that he could not have been Tolbert's attacker because he was at a bar at the time Tolbert and his girlfriend were attacked. Although he claims this alibi, appellant could not provide the name of one person to verify his whereabouts or testify that they witnessed appellant at the bar that night. Appellant also asserts that he was at Patten's house the night Patten was shot, but that Patten pulled a gun on him and attacked him and any harm appellant caused to Patten was out of self-defense. Appellant did not present any other witnesses in his defense to corroborate his testimony. Moreover, the State presented the results of the GSR kits performed on appellant and Patten, which showed gunshot residue on the inside of appellant's hands and no gunshot residue on the inside of Patten's hands. This evidence further corroborates the testimony that appellant fired the gun and Patten did not fire the gun.
 {¶ 21} Furthermore, appellant admits to lying to the police concerning both incidents. Appellant admits that he lied when he told police he did not know Tolbert when he was questioned about the Laird Street incident. Appellant also lied when he fabricated a story to the police that he was shot by a white male at a totally different location than Patten's house. When questioned by the State as to why appellant would need to make up such a story if Patten was really the perpetrator at Laffer Street, appellant claims he was afraid to admit he was buying drugs and he did not want to go to jail.
 {¶ 22} This Court notes that the testimony that the trial court relied on in reaching its decision was disputed by appellant's testimony. Although the testimony was conflicting, this Court declines to overturn appellant's convictions because the trial court believed the State's witnesses. It is well recognized that matters of credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In reviewing the trial court's actions, this Court is mindful that, as the trier of fact, "the [jury] is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proferred testimony." Giurbino v. Giurbino (1993), 89 Ohio App.3d 646,659.
 {¶ 23} Appellant's convictions are not against the manifest weight of the evidence merely because there was conflicting testimony before the jury. See State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, appeal not allowed (2000), 88 Ohio St.3d 1482, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. At appellant's trial, the jury had the opportunity to observe all the witnesses' testimonies and weigh the credibility of said testimonies; therefore, this Court must give deference to the jury's decision. See Berger v. Dare (1994),99 Ohio App.3d 103, 106.
 {¶ 24} The jury clearly found the victims', police officers', and other State's witnesses' testimony more credible than appellant's testimony.
 {¶ 25} Upon careful review of the testimony and evidence presented at appellant's trial, this Court cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered. This Court concludes that appellant's convictions were not against the manifest weight of the evidence. Appellant's first three assignments of error are overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 26} "THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S CRIMINAL RULE 29 MOTION TO DISMISS THE TWO AGGRAVATED BURGLARY CHARGES, THE AGGRAVATED ROBBERY CHARGE, THE FELONIOUS ASSAULT CHARGE, AND THE HAVING A WEAPON WHILE UNDER A DISABILITY CHARGE FOLLOWING THE CONCLUSION OF THE STATE'S CASE."
 {¶ 27} In his fourth assignment of error, appellant argues that the trial court erred in failing to grant his motion to dismiss the charges against him. This Court disagrees.
 {¶ 28} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal *** if the evidence is insufficient to sustain a conviction of such offense or offenses." "A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. In making this determination, all evidence must be construed in a light most favorable to the prosecution. `In essence, sufficiency is a test of adequacy.'" (Citations omitted.) State v.Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 24.
 {¶ 29} This Court notes that sufficiency of the evidence produced by the State and weight of the evidence advanced at trial are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "While the test for sufficiency requires a determination of whether the state met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). However, this Court has held that "[b]ecause sufficiency is required to take a case to a jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 30} Therefore, this Court's determination above that appellant's convictions are supported by the weight of the evidence necessarily settles the issue that the trial court had sufficient evidence before it from the State to prohibit it from granting an acquittal upon appellant's request. The trial court did not err in denying appellant's motion to dismiss the charges against him. Appellant's fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 31} "THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE APPELLANT'S BATSON CHALLENGE."
 {¶ 32} In his fifth assignment of error, appellant argues that the trial court erred in failing to sustain his Batson challenge. This Court disagrees.
 {¶ 33} The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination by the State in the exercise of its peremptory challenges in order to exclude members of minority groups from jury service. Batson v. Kentucky (1986), 476 U.S. 79,89, L.Ed.2d 69, 82-83. In State v. Phillips (Nov. 1, 2000), 9th Dist. Nos. 99CA007297, 99CA007302, this Court summarized the three-part test from Batson used to determine if a peremptory challenge is impermissibly based on race:
 {¶ 34} "First, the defendant must make a prima facie showing that the state purposefully discriminated in exercising a peremptory challenge to remove a prospective juror. To demonstrate a prima facie case of purposeful discrimination, the defendant must demonstrate: (1) that members of a cognizable racial group were peremptorily challenged, and (2) that all of the facts and circumstances raise an inference that the State used the peremptory challenges to exclude jurors on account of their race.
 {¶ 35} "Second, if the defendant makes a prima facie case of discrimination, then the burden is allocated to the state to then provide a race-neutral explanation. `The second step of this process does not demand an explanation that is persuasive, or even plausible. *** "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."'
 {¶ 36} "Thereafter, the trial court must determine whether the proffered explanation by the [S]tate is credibly race-neutral or instead a pretext for unconstitutional discrimination. `In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.' Since the findings of the trial court are based in large part upon the trial court's evaluation of credibility, reviewing courts must accord such determinations great deference. Therefore, the trial court's findings are evaluated under the clearly erroneous standard of review." (Citations omitted.)
 {¶ 37} In this case, the State made a peremptory challenge to strike juror 10, an African American, from which the following discussion ensued between counsel and the judge:
 {¶ 38} "Mr. Pierce: For cause?
 {¶ 39} "Ms. Haslinger: No, no. As a peremptory. I want to bring this to the Court's attention before, the reason why I'm doing it. Certainly according to State v. Darion McElrath I don't have to indicate a reason unless a pattern is shown but I will state one anyway for the record.
 {¶ 40} "She's indicated she knows the defendant in this case.
 {¶ 41} " ***
 {¶ 42} "She feels uncomfortable in this case, and also the fact that she indicated her boyfriend sold drugs. So that would be my race-neutral reason.
 {¶ 43} "The Court: All right. The record should reflect No. 10 is an African-American female.
 {¶ 44} "Mr. Pierce: Judge, for the record, I would make a Batson Challenge to that, that bump.
 {¶ 45} "Ms. Haslinger: Okay.
 {¶ 46} "The Court: She has enunciated a race-neutral reason, several of them."
 {¶ 47} The State also made a peremptory challenge to strike juror 14, an African American, in the following dialogue:
 {¶ 48} "Ms. Haslinger: *** I would indicate that I have noticed Juror No. 14, who I anticipate will be on the panel, is very inattentive. I am concerned that she's not paying attention.
 {¶ 49} "Also, I would indicate — —
 {¶ 50} "The Court: I have noticed that as well.
 {¶ 51} "Ms. Haslinger: — — she has a brother that was convicted of a robbery offense, which is a theft by force. So that is concerning to me. She indicated that there's a drug case pending now for counterfeit controlled substances, and that's all I would anticipate, Judge.
 {¶ 52} "The Court: All right. The record should reflect that Juror No. 14 is also African-American.
 {¶ 53} "All right. Anything further?
 {¶ 54} "Mr. Pierce: I just ask the Court to note my objection to it on the grounds of Batson for Juror No. 14 as well."
 {¶ 55} The judge then asked counsel if they had any juror challenges for cause, both attorneys stated they had no challenges for cause, and the judge proceeded to allow the State to exercise its peremptory challenges against jurors 10 and 14.
 {¶ 56} As an initial matter, this Court notes that the trial court never made a determination that appellant set forth a prima facie case of discrimination when he challenged the State's peremptory challenges. Defense counsel merely objected to the challenges, but did not raise any particular facts and/or circumstances from which to infer discrimination. Nonetheless, the State provided facially valid race-neutral reasons for striking the jurors in question. "`[O]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.'" Phillips, quoting Hernandez v. New York (1991),500 U.S. 352, 359, 114 L.Ed.2d 395.
 {¶ 57} Under a clearly erroneous standard of review, this Court must give deference to the trial court's determination of credibility because "the trial court weighed the various explanations of the state, and was in the best position to evaluate the sincerity and verity of the state's explanations." Id. The record in this case reflects that the State came forward with neutral reasons that the two jurors it challenged might be biased against the prosecution. After evaluating the reasons proffered by the State in defense of their peremptory challenges, this Court cannot conclude that the trial court's decision to find the State's explanation credible was clearly erroneous. Appellant's fifth assignment of error is overruled.
 III. {¶ 58} Accordingly, appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
SLABY, P.J. and WHITMORE, J., CONCUR