SMITH, Appellee,

v.

OHIO STATE UNIVERSITY HOSPITALS, Appellant, et al.

SMITH, Appellant,

v.

OHIO STATE UNIVERSITY HOSPITALS et al., Appellees.

[Cite as *Smith v. Ohio State Univ. Hosp.* (1996), 110 Ohio App.3d 412.]

Court of Appeals of Ohio, Tenth District, Franklin County.

Nos. 95API08–1035, 95API08–1055.

Decided April 16, 1996.

*Abraham Law Offices* and *Rick J. Abraham;  Barkan & Neff* and *Sanford A. Meizlish,* for Claude E. Smith.

*Betty D. Montgomery,* Attorney General; *Emens, Kegler, Brown, Hill & Ritter, L.P.A., William J. Brown* and *Karl W. Schedler,* for Ohio State University Hospitals.

*Betty D. Montgomery,* Attorney General, and *Peter E. DeMarco,* Assistant Attorney General, for Ohio Department of Rehabilitation and Correction.

*Hammond Law Office* and *Frederick A. Sewards,* for Jeffrey P. York, M.D.

---

TYACK, Judge.

Claude E. Smith was an inmate under the control of the Ohio Department of Rehabilitation and Correction.  Apparently, as the result of confusing Smith with another inmate with a similar name, unnecessary surgery was performed on Smith.  As a result, Smith filed a lawsuit.

The Ohio Department of Rehabilitation and Correction has a contract with the Ohio State University Hospitals ("University Hospitals").  University Hospitals in turn has a contract with a variety of corporations to provide the medical services to the inmates.  The corporation then employs the physicians and other medical providers.

Jeffrey York, M.D., performed the surgery on Claude E. Smith.  The Ohio Court of Claims had the responsibility to determine whether York was an employee of the state of Ohio at the time he provided medical care to Smith and whether York was entitled to at least some immunity under the provisions of R.C. 9.86.  The Ohio Court of Claims found that York was entitled to immunity.

Both Smith and University Hospitals have appealed from the trial court's finding.  Smith has assigned two errors for our consideration:

"Assignment of Error No. 1

"The Court of Claims erred in finding that Dr. York was entitled to immunity because he was an employee of the state at the time of the alleged malpractice.

"Assignment of Error No. 2

"The Court of Claims erred in concluding that Dr. York did not act with malicious purpose, in bad faith, or in a wanton or reckless manner by completely failing to consider whether Dr. York withheld from appellant after his operation the true facts regarding appellant's medical condition, or lack thereof, as alleged by appellant in count two of his amended complaint."

University Hospitals has assigned a single error:

"The Court of Claims erred in finding that Jeffrey York, M.D. was acting as an 'employee' of the state, as defined by R.C. 109.36 while performing surgery on Claude E. Smith. Pursuant to App.R. 16(A)(3), Appellant Ohio State University Hospitals contends that this error is set forth in the Decision entered by the Ohio Court of Claims on July 26, 1995, and in the Judgment Entry entered by the Ohio Court of Claims on July 26, 1995."

Because Smith's first assignment of error and University Hospitals' sole assignment of error present the same issue, the two assignments of error will be addressed together.

R.C. 2743.02(A)(2) provides:

"If a claimant proves in the court of claims that an officer or employee, *as defined in section 109.36 of the Revised Code,* would have personal liability for his acts or omissions but for the fact that the officer or employee has personal immunity under section 9.86 of the Revised Code, the state shall be held liable in the court of claims in any action that is timely filed pursuant to section 2743.16 of the Revised Code and that is based upon the acts or omissions." (Emphasis added.)

R.C. 109.36 currently defines an officer or employee as follows:

"(A) 'Officer or employee' means any person who, at the time a cause of action against him arises, * * * is employed by the state or *any person that, at the time a cause of action against the person, partnership, or corporation arises,* is rendering medical * * * services pursuant to a personal services contract *or purchased service contract* with a department, agency, or institution of the state * * *." (Emphasis added.) [1]

Thus, pursuant to R.C. 109.36, 9.86 and 2743.02, a person has personal immunity if he or she is an employee as defined by R.C. 109.36 and if his or her actions are within the scope of employment with the state.

R.C. 109.36 was amended in October 1994, after the surgery on Smith took place. Thus, this court must initially determine whether the version of R.C.

---

1. The emphasized language was added by an amendment to R.C. 109.36, effective October 6, 1994.

109.36 in effect at the time of the surgery should be utilized or whether the current statute should be applied in deciding whether appellee was an employee of Ohio. We find that the prior version of R.C. 109.36 is the appropriate version to be applied in this case.

R.C. 1.48 provides that a "statute is presumed to be prospective in its operation unless expressly made retrospective." Since R.C. 109.36, as amended, does not expressly state that it is to be applied retroactively, we must apply the prior version of R.C. 109.36.

We note that the trial court found that York was entitled to immunity under either version of the statute. However, for purposes of this opinion, we will focus on the language of the prior version of R.C. 109.36, which stated that:

" 'Officer or employee' means any person who, at the time a cause of action against him arises, * * * is employed by the state or * * * is rendering medical * * * services pursuant to a personal services contract * * * with a department, agency, or institution of the state. * * * "

The crucial issue becomes whether York was rendering medical services pursuant to a personal services contract. If York was not rendering services pursuant to a personal services contract, then he was not an employee of University Hospitals.

This issue is not simply resolved. The corporation which employed York is the Department of Surgery Corporation ("DSC"). DSC is a professional corporation comprising all the members of the faculty of the Department of Surgery in the College of Medicine at the Ohio State University. York was both an employee and a shareholder of DSC. He testified that he was required to be both an employee and a shareholder of DSC in order to be accepted for his other employment, that of an assistant professor of urology/surgery at the Ohio State University. Thus, the relationship between University Hospitals and DSC did not keep the entities at arm's length. However, the contract between University Hospitals and DSC which resulted in the medical care for Smith did not dictate which of the various doctors affiliated with DSC would provide the care. University Hospitals simply paid a lump sum of approximately $900,000 a year and DSC then made the specific arrangements.

The phrase "personal services contract" is not defined by statute. The case law interpreting the phrase is sparse. In *Yellow Cab of Cleveland, Inc. v. Greater Cleveland Regional Transit Auth.* (1991), 72 Ohio App.3d 558, 595 N.E.2d 508, the phrase was analyzed in the context of bidding requirements for purposes of R.C. 306.43. In the *Yellow Cab* case, the Eighth District Court of Appeals found that a personal services contract is a contract "in which the offeree is vested with discretion in accomplishing the assigned tasks because his skills,

knowledge, experience and expertise are unique to the area and could not be duplicated by others not similarly qualified." *Id.* at 563, 595 N.E.2d at 511. Under this definition, all the traditional professions would apparently be automatically involved in personal services contracts. However, the era of health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs") and similar organizations for providing health care function on a very different rationale, namely, that physicians are interchangeable with little or no effect on the quality of service.

■ Reduced to its essence, a personal services contract suggests a degree of control exercised by the purchaser over the services to be performed by a chosen individual or individuals; a purchased services contract indicates, as the name implies, a purchase of services without regard to the specific individual to provide the service.

Under the facts of this case, York was not functioning under a personal services contract with a department, agency or institution of the state, and was not a state employee as defined by R.C. 109.36. His services to Smith were the result of his employment with DSC, and DSC was not shown in the trial court to be a department, agency or institution of the state. If he had a personal services contract with anyone, the contract was with DSC. York was not therefore entitled to immunity.

We sustain the sole assignment of error of University Hospitals and the first assignment of error of Smith.

In light of our previous finding as to immunity, we need not address Smith's second assignment of error. That assignment of error is moot.

As a result of the foregoing, we reverse the judgment of the Ohio Court of Claims as to immunity for York. We remand the case to enter a finding that York is not immune and for further appropriate proceedings.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT, J., concurs.

JOHN C. YOUNG, J., dissents.

JOHN C. YOUNG, Judge, dissenting.

Because I do not agree with the conclusion reached by the majority, I respectfully dissent. The crucial issue in this case is whether Jeffrey York, M.D., was acting as an employee of the Ohio State University Hospitals when he performed surgery on the plaintiff, Claude E. Smith. As noted by the majority, the relevant statutes for purposes of determining whether one is entitled to

immunity are R.C. 2743.02(A), 9.86 and 109.36. R.C. 109.36 currently defines an officer or employee as follows:

"(A) 'Officer or employee' means any person who, at the time a cause of action against him arises, * * * is employed by the state or *any person that, at the time a cause of action against the person, partnership, or corporation arises,* is rendering medical * * * services pursuant to a personal services contract *or purchased service contract* with a department, agency, or institution of the state * * *." (Emphasis added.)

Thus, pursuant to R.C. 109.36, 9.86 and 2743.02, a person has personal immunity if he or she is an employee as defined by R.C. 109.36 and if his or her actions are within the scope of employment.

Although I agree that this court should apply the prior version of R.C. 109.36, I am persuaded that York was rendering medical services pursuant to a personal services contract with a department, agency, or institution of the state and is, therefore, entitled to immunity. Clearly, University Hospitals entered into a contractual obligation with the Department of Rehabilitation and Correction ("DRC") to provide medical services to the inmates at the Orient Correctional Institution. University Hospitals then entered into an agreement with the Department of Surgery Corporation ("DSC") to provide these services. As noted by the majority, York was required to be an employee and shareholder of DSC in order to accept the position as assistant professor of urology/surgery at the Ohio State University.

Before it was amended in October 1994, R.C. 109.36 read as follows:

" 'Officer or employee' means any person who, at the time a cause of action against him arises, * * * is employed by the state or * * * is rendering medical * * * services pursuant to a personal services contract * * * with a department, agency, or institution of the state. * * * "

I would find that the prior version of R.C. 109.36 was broad enough to support a finding of immunity, given the facts of this case. I also believe that the amended language of R.C. 109.36 was simply added to help clarify that one is entitled to immunity when rendering medical services pursuant to a contract with a department, agency, or institution of the state, regardless of whether that contract is labeled a "personal services" contract or a "purchased services" contract.[2] The reality is that hospitals often contract out for medical services,

---

2. I do believe that, under the current version of R.C. 109.36, the agreement between University Hospitals and DSC fits more neatly into the "purchased services contract" language. But I would also find that the majority opinion has restricted the meaning of "personal services contract" under the prior statute in an effort to give some effect to the meaning of "purchased services contract" in the current version. Again, it is my contention

such as emergency room services. Yet given the majority's reading of the prior version of R.C. 109.36, a state hospital could avoid liability by simply placing a corporate entity between itself and the doctors that rendered services on behalf of the hospital.

At oral argument, and in the briefs, both appellants argue that the language "pursuant to a personal services contract" essentially requires that York be a *party* to a personal services contract. Appellants also argue that a corporation, such as DSC, cannot be a party to a personal services contract, given DSC's corporate nature. Therefore, appellants argue that, even if York was rendering medical services pursuant to the contract between DSC and University Hospitals, the contract did not qualify as a "personal services" contract, since DSC is a corporation and not an individual. Research has revealed only one case that addressed the issue of whether a corporation could be a party to a personal services contract, and that case specifically stated that a personal services contract existed notwithstanding the corporate nature of one of the parties. See *Ford, Bacon & Davis, Inc. v. Holahan* (C.A.5, 1962), 311 F.2d 901, 904.

Moreover, I would note that the language of R.C. 109.36 requires that one be rendering medical services *pursuant to* a personal services contract; the statute does not specify that one be a *party to* a personal services contract. I would also note that there are *two* agreements in this case: one agreement between University Hospitals and DRC, and one agreement between University Hospitals and DSC. It is undisputed that University Hospitals is an institution of the state for purposes of R.C. 109.36(B) and (D). Thus, if York was rendering medical services pursuant to either one of these agreements, and if either one of these agreements constitutes a personal services contract, I would find that York's conduct falls within the language of the statute.

The majority takes note of the fact that the agreement between University Hospitals and DSC did not dictate *which* of the various doctors affiliated with DSC would provide the care. The majority also notes that if York had a personal services contract with anybody, it would have to be with his direct employer, DSC. Apparently, the majority is convinced that, in order to constitute a personal services contract, *some individual* must either be a *party* to the contract or, at a minimum, be *named* in the contract.

I believe the flaw in this argument is that it centers on the actual parties to a contract or individuals named therein, rather than the *nature* of the contract, *i.e.*, a contract for *personal services.* Generally speaking, a personal services contract is one in which the provider of the services is vested with discretion in accom-

that the prior version was broad enough to give York immunity, but that the amendment to the statute helps to further clarify what protection was intended by the statute all along.

plishing the assigned tasks because his skills, knowledge, experience and expertise are unique to the area and cannot be duplicated by others not similarly qualified. See *Yellow Cab of Cleveland, Inc. v. Greater Cleveland Reg. Transit Auth.* (1991), 72 Ohio App.3d 558, 563, 595 N.E.2d 508, 510–511.

Clearly a surgeon's skills, knowledge, experience and expertise are unique and cannot be duplicated by others not similarly qualified. University Hospitals entered into an agreement with DSC because it was seeking out DSC's expertise in providing qualified surgeons to help University Hospitals meet its contractual obligation to DRC.

Moreover, given that the nature of the contract between University Hospitals and DRC was to provide specialized skills, and given that York was operating on Smith pursuant to and because of that very contract, I would find that York is entitled to immunity.

As noted by the majority, the issue in this case is not simply resolved, because the relationship between University Hospitals and DSC, given these facts, is unusual. Most of the cases cited by the parties involve fact patterns where a physician wears two hats: one when he or she works as an employee for the benefit of the state hospital, and one when he or she works as an employee of the private corporation for the private corporation's benefit.

This is not a case where York performed surgery on a private patient for a fee, no part of which was paid over to University. Hospitals. See *Klingel v. Ohio State Univ. Hosp.* (1995), 72 Ohio Misc.2d 25, 655 N.E.2d 457; *Katko v. Balcerzak* (1987), 41 Ohio App.3d 375, 536 N.E.2d 10; and *Cox v. Ohio State Univ. Hosp.* (Mar. 2, 1994), Ct. of Cl. No. 92–08038, unreported.

In the instant action, York was conducting business, via DSC, in order to fulfill *University Hospitals'* contractual obligations to DRC. Moreover, DSC was paid a lump sum each month; DSC was not getting paid on a fee-for-service basis. More important, York's efforts in this case were not solely to improve the financial condition of DSC, as they were in the *Klingel* case; rather, York's efforts were to help University Hospitals fulfill its contractual obligation to DRC. Arguably, York's efforts did not improve the financial condition of DSC insofar as DSC provided those services for approximately thirty to thirty-five percent per patient of what DSC would charge a private patient.

Thus, I would find that the instant action does not involve a "scope of employment" question, insofar as York was not handling patients on a fee-for-service basis and handing the profits over to DSC. Cf. *Nichols v. Villarreal* (1994), 94 Ohio App.3d 173, 640 N.E.2d 557. Rather, University Hospitals was paying DSC a lump sum for York's services. Given that York was only performing surgery on Smith because University Hospitals had a contract with

DRC, and given that his performance was because of and "pursuant to" that contract, I would find that York is entitled to immunity under the former version of R.C. 109.36.

For those reasons, I believe that the above factors support the trial court's conclusion that York was acting pursuant to a personal services contract, and was acting as an employee of University Hospitals for purposes of R.C. 109.36. Accordingly, I would overrule Smith's first assignment of error and University Hospitals' sole assignment of error.

However, I would sustain Smith's second assignment of error. R.C. 9.86 provides that an employee will be entitled to immunity *unless* the employee's actions were manifestly outside the scope of his or her employment or official responsibilities, *or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.* It is undisputed that York performed a prostatectomy on Claude E. Smith, and that the person who was to receive the prostatectomy was Claude A. Smith.

York testified that he performed the prostatectomy on Smith in July 1992 based on an ultrasound-assisted biopsy of April 1992. The biopsy report identified the patient as Claude E. Smith. York testified that the name and identification numbers on the patient's chart all indicated that Claude E. Smith was the patient with cancer and was the patient in need of surgery. Unfortunately, the record does not contain this chart, nor is there anything in the record to reflect whether Claude E. Smith consented (or refused to consent) to this surgery. The record does not contain any testimony by Claude E. Smith, and, again, there is no consent form in the record to demonstrate that Claude E. Smith consented to this surgery. The only testimony pertaining to this issue is York's, and he did not affirmatively testify that he received consent; nor did he testify that Claude E. Smith ever refused consent. Given the state of the record, and given that the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact, I would affirm the trial court's finding that York acted within the scope of his employment when he operated on Smith. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

However, I would also find that the trial court failed to address the issue raised in Smith's second assignment of error.

In his second assignment of error, Smith argues that York failed to advise him of his suspicion that the wrong person had been operated upon. It is Smith's contention that York withheld true facts regarding his medical condition and that this constitutes malicious purpose, bad faith, and/or a wanton or reckless manner for purposes of R.C. 9.86. Thus, Smith argues that the Court of Claims erred in concluding that York did not act with malicious purpose, in bad faith, or in a

wanton or reckless manner and further argues that the Court of Claims erred because it simply did not address York's actions after the surgery.

I would find that there is evidence to support the trial court's conclusion that York did not act outside the scope of his employment when he *operated* on Smith. However, the trial court failed to make any finding as to whether York's actions after the operation were within the scope of his employment and/or whether York acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Thus, I would sustain Smith's second assignment of error and remand for the sole purpose of having the trial court determine whether York's actions after the surgery were within the scope of employment and are entitled to immunity.

For all of the above reasons, I respectfully dissent.