OPINION
Plaintiff-appellant, Walter Wade, appeals from the judgment of the Court of Claims of Ohio finding that Dr. James G. Wright was entitled to personal immunity from appellant's civil action, pursuant to R.C. 9.86.
Appellant filed a complaint on October 19, 1998, in the Court of Claims of Ohio alleging that defendant-appellee, The Ohio State University Medical Center ("OSUMC"), committed medical malpractice arising from surgery performed on appellant on May 8, 1996. On the same day, appellant also filed a complaint in the Franklin County Court of Common Pleas. OSUMC filed an answer on November 13, 1998. In an order filed December 20, 1998, the Court of Claims stayed the proceedings pending an evidentiary hearing to determine whether the physicians who performed surgery on appellant were entitled to civil immunity. The court held an evidentiary hearing on the immunity issue on April 23, 1999. In a judgment entry, filed June 2, 1999, the court found that Dr. Charles H. Cook was entitled to civil immunity because he was a resident employed by OSUMC at the time of the surgery. The court also found that Dr. Wright was entitled to personal immunity because he performed appellant's surgery pursuant to a purchased service contract. Appellant filed a timely notice of appeal.
On appeal, appellant asserts two assignments of error:
 1. The Court of Claims erred by granting civil immunity to a physician rendering medical services in his capacity as an employee of a private corporation.
 2. The Court of Claims erred in determining Dr. Wright was rendering medical services pursuant to a purchased service contract with a state entity.
The Ohio Department of Rehabilitation and Corrections ("ODRC") entered into a contract with OSUMC to provide medical services to inmates in the custody of ODRC. OSUMC then entered into an agreement with the Department of Surgery Corporation ("DSC"), a private physician practice group comprised of the faculty of OSUMC's Department of Surgery, to provide medical services to the inmates. Dr. Wright, both a faculty member at OSUMC and an employee and shareholder of DSC, performed appellant's surgery and was assisted by Dr. Cook, an employee of OSUMC. Subsequently, it was discovered that a surgical towel had been left in appellant's abdomen.
We address appellant's two assignments of error together. Essentially, appellant argues that the Court of Claims erred by finding that Dr. Wright was entitled to immunity. We disagree.
The question of whether a state employee is entitled to personal immunity is a question of law, but also involves a consideration of the specific factual circumstances of the case.Ferguson v. The Ohio State Univ. Medical Ctr. (June 22, 1999), Franklin App. No. 98AP-863, unreported. Because our review involves an examination of the underlying facts, we must review the trial court's factual findings to determine if they are against the manifest weight of the evidence. Scarberry v. OhioState Univ. Hosp. (Dec. 3, 1998), Franklin App. No. 98AP-143, unreported. Thus, we must defer to the trial court's determination of matters of credibility and must affirm if the judgment is supported by some competent, credible evidence going to all essential elements of the case. Id.
Under R.C. 9.86, officers and employees of the state are immune from civil liability arising from damage or injury caused in the performance of the officer or employee's duties, unless the individual's actions were outside the scope of his or her employment or official responsibilities, or unless the individual acted with malicious purpose, in bad faith, or in a wanton or reckless manner. "Officer and employee" is defined in R.C.109.36(A) to include any person who is rendering medical services pursuant to a personal service contract or purchased service contract with a department, agency, or institution of the state. R.C. 2743.02(F) provides that a civil action against a state officer or employee, as defined in R.C. 109.36, must first be filed in the Court of Claims, which has exclusive, original jurisdiction to determine the issue of personal immunity under R.C. 9.86.
Here, the Court of Claims concluded that Dr. Wright was entitled to immunity because he performed appellant's surgery pursuant to a purchased service contract with a state agency. Appellant argues that, because Dr. Wright treated appellant in his capacity as an employee of DSC and because OSUMC has failed to produce a contract between OSUMC and DSC, Dr. Wright was not entitled to immunity. OSUMC agrees that Dr. Wright treated appellant in his capacity as a DSC employee, but argues that this treatment was pursuant to a purchased service contract between OSUMC and DSC.
In Smith v. Ohio State Univ. Hosp. (1996), 110 Ohio App.3d 412,416, this court dealt with the same contracts at issue here and concluded that the doctor was not immune because he was not functioning under a personal service contract. However, this court acknowledged that the version of R.C. 109.36 in effect at that time did not cover purchased service contracts nor could it be applied retroactively. Id. at 414-415. This court distinguished between a personal service contract and a purchased service contract by indicating that a personal service contract is one in which the purchaser exercises a degree of control over the services to be performed by designated individuals, while a purchased service contract is one in which the purchaser purchases services without regard to the individuals who are to perform the services. Id. at 416. The dissent in Smith argued that the agreement between OSUMC and DSC qualified as a personal service contract but conceded that the agreement fit more closely the definition of a purchased service contract. Id. at 417, fn. 2.
Our review of the record reveals that there is competent, credible evidence going to all essential elements of the case that supports the judgment of the Court of Claims. OSUMC produced the contract between ODRC and OSUMC for the provision of medical services to inmates. An addendum to the contract indicates that it is effective from July 1, 1993, and shall terminate on June 20, 1995, but that it may be renewed for a period of two years ending June 30, 1997. Although appellant argues that OSUMC failed to present evidence that the contract was renewed, Tim Moore, an administrator with OSUMC who was involved with the administration of the contract, testified that the contract was renewed.
Dr. Wright testified in his deposition that OSUMC entered into an agreement with DSC to provide medical services to inmates pursuant to the contract between OSUMC and ODRC. Moore also testified that there was an agreement between OSUMC and DSC to provide medical services to ODRC's inmates. Appellee presented a blanket order from OSUMC to DSC for $862,840 for "miscellaneous professional medical treatment for patients from the Ohio Department of Corrections and Rehabilitation" between July 1, 1995, and June 30, 1996. The face of the purchase order specifically refers to the "prison contract." Moore testified that the purchase order was the only document produced between OSUMC and DSC relating to the agreement and that they issued a new purchase order each fiscal year for these services. Appellant argues that the purchase order cannot be a purchased service contract because it is not signed by a representative of DSC. However, at the very least, the purchase order is evidence of an agreement between OSUMC and DSC, in that it identifies the parties to the agreement, it states that medical services were to be provided to inmates, it defines a period of time covered, and it indicates the price for these services. Thus, there is competent, credible evidence indicating the existence of an agreement between OSUMC and DSC for prisoner medical services.
The evidence also indicates that the agreement between OSUMC and DSC was a purchased service agreement. Neither OSUMC nor ODRC decided which specific physician was to provide medical services to inmates, and this decision was within the sole discretion of DSC. DSC was paid a set amount for medical services, which was a portion of the money ODRC paid to OSUMC for prisoner medical care. Individual doctors did not bill inmates or other third parties, such as insurers, for these medical services, and the only compensation the physician received was in the form of a salary from DSC. DSC kept records of the services provided through a "super bill," but this document was for internal accounting purposes only and never resulted in a bill to the inmate or ODRC. OSUMC received printouts from DSC's computer billing system reflecting the medical services provided to inmates, and OSUMC would issue transaction requests to ODRC for a portion of the money under the contract, which OSUMC would distribute back to DSC through purchase orders.
Although appellant argues that Dr. Wright was treating him as a private patient, there is no evidence in the record that indicates that Dr. Wright ever saw appellant prior to May 1996, when he was treated as an inmate in the custody of ODRC. Neither appellant nor ODRC was billed for these medical services, which were provided by Dr. Wright, as an employee of DSC, as part of the blanket payment for miscellaneous medical services under the purchased service agreement.
Because we find that there is competent, credible evidence in the record that Dr. Wright provided medical services to appellant under a purchased service agreement, the Court of Claims did not err by concluding that Dr. Wright was entitled to personal immunity under R.C. 9.86 and 109.36(A).
Consequently, appellant's two assignments of error are overruled, and the judgment of the Court of Claims of Ohio is affirmed.
 ___________________________ KENNEDY, J.
DESHLER and LAZARUS, JJ., concur.