JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Steven Crotts appeals from the order of the trial court which determined that defendants Reynold Lindsey, Valerie Lindsey and Jeffrey Lawson did not receive "full value" from their contract with plaintiff and awarded plaintiff limited damages in his breach of contract action. For the reason set forth below, we affirm.
 {¶ 2} On February 13, 1999, plaintiff agreed to sell and defendants agreed to purchase plaintiff's school-related photography business, Portrait Photography Studio. In relevant part, the contract of sale provided that plaintiff would sell to defendants all the equipment and tangible assets, and all of the "present photography contracts held by the business as set forth on the attached `Exhibit B.'" The entities listed on this exhibit were various schools, Head Start programs and day care centers. The agreement further provided that defendants would pay plaintiff $50,000 plus 6 percent interest, in monthly installments.
 {¶ 3} On June 14, 2005, plaintiff filed this action against defendants alleging that they had defaulted upon their loan payments and owed him $59,914.06 in principal and interest payments.
 {¶ 4} Defendants denied liability and filed a counterclaim against plaintiff alleging that plaintiff induced the sale by falsely representing that he had approximately twenty written and transferable contracts with schools or related entities, that plaintiff required immediate execution of the contract documents, *Page 3 
depriving defendant of an opportunity to secure counsel, and that plaintiff concealed the fact that the school contracts would likely be dishonored due to his recent arrest for sexually abusing a school student.
 {¶ 5} The matter proceeded to a bench trial on April 21, 2006. For his case, plaintiff testified on his own behalf and also presented testimony from Valerie Lindsey, Timothy Scasny, and Jeffrey Lawson.
 {¶ 6} Plaintiff testified that defendants Lawson and Ms. Lindsey worked for him and provided him with extensive help prior to the sale of the company. According to plaintiff, Lawson met with school officials, set up price lists, and knew the terms of the contracts and the various photo packages. Ms. Lindsey maintained files on the contracts and package requirements and also kept payment records.
 {¶ 7} Plaintiff opined that he sold defendants equipment worth over $16,000. He testified that he performed all of his requirements under the contract and assisted defendants in taking over the business, but defendants stopped making payments to him in 2003. Currently, defendants owed him about $62,000.
 {¶ 8} On cross-examination, he admitted that he was selling the "obligations" listed on Exhibit B of the purchase agreement, that the contracts were personal contracts, and that they had to be rebid each year. He stated that it was obvious and therefore not necessary to tell defendant that the contracts had to be rebid each year. Only the contract with Cleveland Heights High was binding; the rest were only loose arrangements which could be cancelled at any time. As to the equipment, he *Page 4 
admitted that he bought only one camera new but he indicated that he sold other items, such as vases, cards, and a novel business operation. Finally, he admitted that defendants paid him for his services in assisting them with the operation of the business after the sale.
 {¶ 9} Timothy Scasny, a teacher at Cleveland Heights High, testified that he outlines bid requirements and deals with photographers who wish to submit bids. Plaintiff's company was hired for most of the years from 1987 through 1997 and plaintiff was extremely accommodating and good at what he did. The defendants assisted him in the business and the name of the company changed its name from Portrait Photography to Digital Image Photos in 1999. The school continued to do business with Digital Image until the spring of 2003. Defendants appeared knowledgeable about the business and performed well but the principal of the school repeatedly upgraded the software and made increasing demands which in turn caused defendants to incur additional expenses.
 {¶ 10} On cross-examination, Scasny stated that the school did not hire defendants' company after the 2003-2004 school year but he denied that plaintiff's arrest played a role in this decision.
 {¶ 11} Valerie Lindsey testified, upon cross-examination, that she worked for plaintiff for several years before entering into the purchase agreement. While working for plaintiff she learned how to compose and negotiate contracts. As of 2006, Digital Image has agreements with two or three schools. *Page 5 
 {¶ 12} Ms. Lindsey further admitted that a provision of the purchase agreement states that plaintiff "makes no warranty, express, implied or otherwise, regarding the future income and expenses or performance of the business." She further admitted that she learned how to negotiate contracts and to prepare them using forms that she had as plaintiff's secretary. She admitted that plaintiff helped defendants after the sale of the business and that she paid him for other items and services. She also admitted that the defendants stopped paying plaintiff but she stated that they lost business as the result of his publicized legal problems and were not making much money. Criminal charges against plaintiff were dismissed in April 1999 but they were subsequently reinstated in 2002. He was later convicted of gross sexual imposition and kidnapping. They are still operating the business, however.
 {¶ 13} Ms. Lindsey acknowledged keeping the equipment, which she purchased from plaintiff, but she stated that some of it is obsolete. She admitted that she had only paid him between ten thousand and twelve thousand dollars of the purchase price.
 {¶ 14} Lawson stated that he began working for plaintiff in 1993 but indicated that he took photographs and did not know the business end of the transactions. He was aware that the contracts were to be negotiated yearly, however.
 {¶ 15} For their case, defendants testified that they did not consult with an attorney before signing the agreement and did not negotiate because the offer to purchase was presented with urgency. At the same time, however, plaintiff's *Page 6 
counsel insisted that plaintiff was innocent and would be cleared of all charges. Exhibit B listed "Photography Contracts" but there were no actual written contracts which transferred to them except for the Cleveland Heights High agreement. They received no work from any of the other entities listed on Exhibit B and learned that new agreements would have to rebid the following fall.
 {¶ 16} Plaintiff's arrest impaired their business and caused them to change the name of the company. Further, defendants asserted that the equipment which they obtained was not purchased new and quickly became obsolete.
 {¶ 17} In a written Opinion and Order, the trial court concluded that defendants failed to consult with an attorney even though they were aware that plaintiff had been arrested for sexual abuse of minors, and that plaintiff was represented by counsel. The court noted that defendants had paid only $9,000 of the purchase price but it found that only the Cleveland Heights High School contract was honored following the purchase. The court also noted that it was reasonable to infer that plaintiff's conviction for sexual molestation of minors impaired the business's dealings with other schools and education centers. The court therefore concluded that defendants did not receive full value under the contract and it awarded plaintiff an additional $6,000, plus interest, rather than the entire $59,914.06, plus interest sought by plaintiff. The trial court found in favor of plaintiff on defendants' counterclaim.
 {¶ 18} Plaintiff filed a motion for a new trial and also filed a motion for attorney fees pursuant to the terms of the promissory note executed by defendants. The trial *Page 7 
court denied both motions and plaintiff now appeals, assigning three errors for our review.
 {¶ 19} Plaintiff's first assignment of error states:
 {¶ 20} "The trial court erred in not granting plaintiff the full balance on the contract and promissory note signed by defendants."
 {¶ 21} In order for a plaintiff to recover on a contract, he must show that he substantially performed or tendered performance of his own promises. Hutchinson v. S.M.C. Aluminum Foundry (Feb. 19, 1993), Wood App. No. 91WD121. A failure of the consideration offered by plaintiff excuses nonperformance of the defendant. Cf. Colonial Ins. Co. v.Graw (1955), 102 Ohio App. 430, 438, 129 N.E.2d 491. The court stated:
 {¶ 22} "In order for a party to maintain an action for the benefits due him under a contract, he must be able to show substantial performance of his own promises. Petersburg Fire Brick Tile Co. v.American Clay Machinery Co., 89 Ohio St., 365, 106 N. E., 33, L.R.A. 1915B, 536. In 12 American Jurisprudence, 927, in dealing with the subject of partial failure of consideration, it is said in Section 360:
 {¶ 23} "`* * * Before partial failure of performance of one party will excuse the other from performing his contract or give him a right of rescission, the act failed to be performed must go to the root of the contract. * * *'" *Page 8 
 {¶ 24} Accord R.C. 1303.35; Cauffiel Machinery Co. v. Eastern Steel Metal Co. (1978), 59 Ohio App.2d 1, 391 N.E.2d 743 ("the maker of a note may assert defenses to the underlying contractual obligation including failure of consideration.").
 {¶ 25} Moreover, the evidence indicates that plaintiff obtained his contracts through bidding and his skill, knowledge, and experience. This tends to support defendant's contention that his contracts were personal service contracts. See Smith v. Ohio State University Hospitals (1996),110 Ohio App.3d 412, 674 N.E.2d 721. In Ohio, contracts to render professional or personal services, or those that involve a relationship of personal confidence and which involve rendition of skill or competence, are not transferable or assignable. Sparagowski v.Williams (July 25, 1980), Lucas App. No. L-80-064.
 {¶ 26} In this matter, the evidence demonstrated that plaintiff would sell to defendants all the equipment and tangible assets, and all of the "present photography contracts held by the business as set forth on the attached `Exhibit B.'" The entities listed on this exhibit were various schools, Head Start programs and day care centers. The equipment was not new and was becoming outdated due to advances in photography. Moreover, defendants only benefitted from one of the listed contracts, the agreement with Cleveland Heights High, as the other entities selected other photographers, and in any event the contracts would have to be rebid in the fall. Plaintiff admitted that he was selling the "obligation" of the contract. *Page 9 
 {¶ 27} The evidence also indicated that the equipment was not new and that because the field was changing, it was becoming obsolete. In accordance with all of the foregoing, we concur with the trial court's determination that defendant did not receive full value under the contract. The defendants' ability to obtain contracts was further impaired by the allegations leveled at plaintiff. The evidence demonstrates that there was a partial failure of consideration and, in turn, justified defendants' partial failure to pay the trial court's award of $6,000, plus interest, rather than the entire $59,914.06 sought by plaintiff.
 {¶ 28} From the foregoing, we conclude that there is ample competent, credible evidence to support the trial court's determination that defendants did not receive full value under the contract and to support the court's award of $6,000, plus interest, rather than the entire $59,914.06.
 {¶ 29} This assignment of error is overruled.
 {¶ 30} Plaintiff's second assignment of error states:
 {¶ 31} "The trial court erred in not granting plaintiff's motion for a new trial as the award of damages was inadequate."
 {¶ 32} We review a trial court's decision granting or denying a new trial for abuse of discretion. McCrae v. Wal-Mart Stores, Inc., Mahoning App. No. 04MA275, 2005-Ohio-4472. Reversal for abuse of discretion requires a determination that the trial court's attitude is unreasonable, arbitrary or unconscionable. Id., citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. *Page 10 
 {¶ 33} In this matter, plaintiff opined that the equipment was worth over $16,000 but the totality of the evidence tended to show that the equipment was not new and that it was becoming obsolete due to changes in the field. The evidence also tended to support the defendants' claim that they did not receive the full value of the agreement as the contracts listed in Exhibit B yielded only one actual job. From the foregoing, we cannot conclude that the trial court abused its discretion in rejecting plaintiff's claim that inadequate damages were awarded or that it abused its discretion in denying the motion for a new trial.
 {¶ 34} This assignment of error is overruled.
 {¶ 35} Plaintiff's third assignment of error states:
 {¶ 36} "Plaintiff was denied due process of law when the court overruled his motion for attorney fees without a hearing."
 {¶ 37} We review this claim for an abuse of discretion. Ohio StateUniv. v. Alexander, Cuyahoga App. No. 87983, 2007-Ohio-264. Accord R.C.1301.21(B) which states:
 {¶ 38} "If a contract of indebtedness includes a commitment to pay attorney's fees, * * * a person that has the right to recover attorney's fees under the commitment,* * *, may recover attorney's fees in accordance with the commitment, * * *."
 {¶ 39} Moreover, a fee award must be reasonable. Swanson v.Swanson (1976), 48 Ohio App.2d 85, 355 N.E.2d 894. *Page 11 
 {¶ 40} We find no abuse of discretion in this instance. Because the evidence at trial cast doubt upon the overall value which defendants received from the agreement, the trial court could correctly determine within the sound exercise of its discretion, that it would be unreasonable to award plaintiff attorney's fees. This assignment of error is without merit.
Affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1