[Cite as *Crockett Homes, Inc. v. Hamilton*, 2012-Ohio-2162.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| CROCKETT HOMES, INC., ET AL | : | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiffs-Appellees | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00222 |
| JENNIFER ROHRER HAMILTON, ET<br>AL | : |  |
|  | : |  |
|  | : | O P I N I O N |
| Defendants-Appellants |  |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of
                             Common Pleas, Case No. 2010CV02794

JUDGMENT:                    Affirmed in part; Reversed in part

DATE OF JUDGMENT ENTRY:      May 14, 2012

APPEARANCES:

For Plaintiff-Appellee               For Defendants-Appellants

GREGORY W. HAPP                      RICHARD A. PAOLO
238 West Liberty Street              EDWARD P. AKIN
Medina, OH 44256                     2200 U.S. Bank Tower
(Counsel withdrew)                   425 Walnut Street
                                     Cincinnati, OH 45202
ROBERT B. HOLMAN
Box 46390                            CRAIG PELINI
24262 Broadway Avenue                2848 Carrington Street N.W.
Cleveland, OH  44146                 North Canton, OH  44720

*Gwin, J.*

{1} Defendants-appellants Jennifer Rohrer-Hamilton, Jed Rohrer, James Richard Rohrer, Mohler Lumber Company, Inc., Rohrer Development Company, LLC, and Jed A. Rohrer, Sr., as Executor of the Estate of Richard G. Rohrer, Deceased, appeal a judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of plaintiffs-appellees Crockett Homes, Inc. and Crockett Construction Company, Inc. Appellants assign eight errors to the trial court:

{2} "I. THE TRIAL COURT ERRED IN CONCLUDING THAT ANY ACTIONS OF DEFENDANTS CAUSED CROCKETT TO LOSE ITS ENTIRE REMAINING PROJECTED PROFITS FROM THE PROJECT.

{3} "II. THE TRIAL COURT ERRED IN CALCULATING DAMAGES, EVEN IF CROCKETT HAD FULLY PERFORMED AND DEFENDANTS WERE IN BREACH.

{4} "III. THE TRIAL COURT HAD NO RATIONAL BASIS FOR ITS $24,000 PER LOT MONEY DAMAGES AWARD TO CROCKETT.

{5} "IV. THERE WAS NO LEGAL BASIS FOR ASSIGNING ANY JOINT AND SEVERAL LIABILITY FOR THE DEVELOPMENT AGREEMENT TO MOHLER.

{6} "V. ANY DUTY TO CONVEY A PARTICULAR LOT WAS BREACHED, IF AT ALL, WITH RESPECT TO CROCKETT HOMES, NOT CROCKETT CONSTRUCTION.

{7} "VI. THE TRIAL COURT ERRED IN ASSIGNING AND ADVERTISING COSTS AS DAMAGES TO DEFENDANTS, IN DEROGATION OF THE WRITTEN DEVELOPMENT AGREEMENT.

**{8}** "VII. ANY DUTY RICHARD ROHRER OWED CROCKETT ARISING FROM THE DEVELOPMENT AGREEMENT EXPIRED UPON HIS DEATH.

**{9}** "VIII. THE TRIAL COURT ABUSED ITS DISCRETION BY PARING THE JUDGMENT OWED BY CROCKETT HOMES BENEATH THE LEVEL DAVID HAYES ADMITTED TO IN SWORN TESTIMONY."

THE FACTS

**{10}** The matter was tried over four days to the bench. The court's judgment entry of August 25, 2011 sets out the court's findings. The court found David Hayes is a majority shareholder of Crockett Homes, Inc. and Crockett Construction Company, Inc. (hereinafter "Crockett"). Crockett Homes builds residential houses. In 2004, Hayes learned a large parcel of land was available in the Tuslaw area of Stark County. Hayes obtained an option to buy the property. A local lumber company, not Mohler Lumber, was interested in backing the development with Hayes, but Hayes was a regular customer at Mohler Lumber. When Mohler Lumber representatives learned of the project, they approached Hayes to discuss backing the development in return for providing the lumber for the homes.

**{11}** Dr. Richard Rohrer was the controlling owner of Mohler Lumber Company. He was a physician who resided in Morrow County, Ohio, and was not a hands-on owner. For the most part, the negotiations for the land development project involved Mohler employees Loomis and Zepp. The court found Hayes did have a few discussions with Dr. Rohrer, but most often, discussed the matters with Loomis, or sometimes, Zepp.

**{12}** Eventually the parties struck an agreement where Crockett would sign the option to buy over to Dr. Rohrer. In return, Dr. Rohrer and Crockett would cooperate on developing the land in four phases. Dr. Rohrer was to contribute the capital. Crockett was to act as general contractor supervising the development of the property into residential lots and then to market the lots. The parties were to split the profits from the venture 60% to Dr. Rohrer and 40% to Hayes. In addition to the profit-splitting clause, the agreement provided for a premium on each lot sold, with the parties splitting the premium depending upon whether Crockett or a third party sold the lot.

**{13}** Dr. Rohrer's attorney drafted a contract titled "Development Agreement", dated March 23, 2005. Dr. Rohrer and Hayes signed the agreement. The agreement included an "Exhibit E" attached and incorporated by reference. The exhibit was a spreadsheet computing the costs of developing the land and preparing the lots, and explained how the profits would be distributed. Instead of cash, Crockett would receive lots, transferred in installments as the lots were sold.

**{14}** Both sides began to perform under the Development Agreement, and complied with its terms. The first phase of the development was completed and sold well; most of the lots in phase one were sold. However, two events caused the development to come to a halt approximately two years after the development was commenced.

**{15}** First, the real estate market, to use the trial court's apt word, tanked. Sales dropped on existing lots and new construction fell to virtually nothing.

**{16}** The second event was the deteriorating health of Dr. Rohrer. Dr. Rohrer had participated in a minor way in the on-going development of the property, and granted a broad power of attorney to Loomis and Zepp to make decisions.

**{17}** As the doctor's health worsened, his children Jennifer, Jed and James began to act on his behalf. The court found no evidence was produced to demonstrate Dr. Rohrer delegated any right to act to his children, but as a practical matter, they did become involved in the development. The court found there was no proof that the Rohrer children had any legal authority to assume their father's affairs while he was still alive. Dr. Rohrer died in May, 2010.

**{18}** At first the parties had a good relationship, but eventually the Rohrer children felt it was too expensive to complete the Development Agreement because it had become a losing proposition. The development came to a standstill when the Rohrer children decided they did not want to put any more of their father's money into the development to finish the next phase. At the time, Dr. Rohrer was still alive, but the Rohrer children indicated they spoke on his behalf.

THE DISPUTE

**{19}** The Rohrer family contended that Hayes and Crockett went forward with the completion of phase two by completing roads and other development items even though the Rohrers told them not to proceed. The court found there were two face-to-face meetings that occurred prior to the doctor's death. Present were Loomis and perhaps Zepp, both of whom had full power of attorney to act for Dr. Rohrer. Also present were the three Rohrer children, Hayes, and Hayes' daughter. Dr. Rohrer did not attend. The court found both sides had different opinions as to the result of the two

meetings.  The Rohrer children wanted no further cash outlay, but Hayes felt it was time to finish phase two and he could obtain the final work without a large cash outlay. Hayes proposed to find an excavator who would finish the excavation work and accept payments over time as the lots sold.  At the conclusion of the meetings, Hayes hired a contractor to complete phase two.

{20}  The Rohrers claimed they did not agree to this and that they had refused to move forward with the development.  The contractor who completed phase two was not paid and filed a lien on the property.

{21}  Jed Rohrer is the executor of the estate of Dr. Rohrer and in his capacity as executor he refused to convey a lot in violation of the Development Agreement.  The court found while Crockett had fulfilled its obligations under the agreement, Dr. Rohrer and his estate have not complied with the terms of the agreement.

{22}  Appellants argued that Crockett and Hayes also breached the development agreement.  The court found the evidence does not support the claim, and Crockett and Hayes have complied with the Development Agreement. The court noted neither the Rohrer children, nor more specifically, Dr. Rohrer, notified Hayes in writing he was not to proceed with the completion of phase two.   The court found under the specific terms of the Development Agreement Hayes was not required to obtain the permission of the Rohrer children to complete phase two, and Crockett had the right to finish phase two of the development.  Dr. Rohrer, when he was alive, and his estate after his death, could not simply walk away.

{23} Mohler Lumber filed a claim for varying amounts due from Crockett. Mohler produced what the trial court characterizes as a "myriad" of work orders,

invoices, and billings, which were incoherent and scattered. The court found Mohler's bookkeeping system could be categorized as sloppy. The court awarded Mohler from Crockett $52,150.84, with no service charges or interest to date allowed. The court found Mohler had not proven by the greater weight of the evidence any other amounts were due.

{24} The court found the real estate constitutes an asset of Dr. Rohrer's estate, and Crockett has a valid claim against the estate. The court noted the estate inventory is not accurate because it does not list the real estate as an asset. The court found the real estate identifies a limited liability corporation, but nevertheless the title holder of the real estate is Dr. Rohrer. The court found the Rohrer children are parties to the within action only from the standpoint that they are heirs of the estate and potentially could inherit the property.

THE AWARD

{25} Crockett sought specific performance of the development agreement, but the trial court found specific performance is not a viable remedy under the circumstances of the case, and awarded monetary damages. The court awarded to Crockett from appellants' damages in four categories:

{26} (1)$10,000 for losses resulting from the failure to issue a deed and close on the sale of lot number 1710 resulting in a breach of the development agreement;

{27} (2) $11,590.95 as payment for 50% of advertising and maintenance;

{28} (3) $16,500.00 as the earned but unpaid premiums for lots sold under the development agreement; and

**{29}** (4) the current value ($24,000.00 per lot) of the remaining 15 lots for which Crockett Construction, Inc. would have been entitled to had the Development Agreement been completed, minus costs savings in the amount of $51,045.00, which yields $380,955.00.

**{30}** The court thus awarded Crockett a total of $347,045.00 plus interest at the statutory rate and found the parties are jointly and severally liable.

STANDARD OF REVIEW

**{31}** Appellants argue our review of the within should be *de novo*, because pure contract interpretation is a question of law. *Nationwide Mutual Fire Insurance Company v. Guman Brothers Farm,* 73 Ohio St. 3d 107, 108, 652 N.E. 2d 684 (1995). Crockett concedes that this is a correct statement of law, but argues appellants' assignments of error challenge the court's factual findings. Crockett cites us to *Kaufman v. Byers,* 159 Ohio App. 3d 238, 2004-Ohio-6346, 823 N.E. 2d 520, ¶37 (11th District) for the proposition this court may not reverse the trial court's decision determining damages absent an abuse of discretion. The Supreme Court has repeatedly defined the term abuse of discretion as being unreasonable, arbitrary, or unconscionable. See, *e.g.*, *Blakemore v. Blakemore,* 5 Ohio St. 3d 217, 219, 450 N.E. 2d 1140 (1983).

**{32}** This court will examine the contract itself *de novo*, but will apply the abuse of discretion standard to the trial court's factual determinations. A judgment supported by some competent and credible evidence will not be reversed on appeal as being against the manifest weight of the evidence. *C.E. Morris v. Foley Construction Company,* 54 Ohio St. 2d 279, 376 N.E. 2d 578 (1978), syllabus. We must presume the findings of fact are correct, which means evidence susceptible to more than one

interpretation must be construed in a manner consistent with the trial court's judgment. *Gerijo, Inc. v. Fairfield,* 70 Ohio St. 3d 223, 1994-Ohio-432, 638 N.E. 2d 533.

I & II

{33} In their first assignment of error, appellants argue the trial court erred in finding their actions caused Crockett to lose its entire expected profits on the project. In their second assignment of error, they argue the court erred in calculating damages even if it was correct in finding Crockett had fully performed and appellants were in breach.

{34} Generally, a court's determination of whether a party has materially breached a contract is a question of fact. *Kersh v. Montgomery Developmental Center,* 35 Ohio App. 3d 61, 519 N.E. 2d 665 (10th Dist 1987). If the court finds only one party has materially breached the contract, the non-breaching party is entitled to recover restitution or damages for its expectation interest. *Yurchake v. Jack Boiman Construction Company,* 3 Ohio App. 3d 15, 443 N.E. 2d 526 (1981).

{35} Under the contract, Crockett undertook two separate duties, to develop the property and then to market it. The court determined Crockett was entitled to recover its expectation damages, that is, what it would have received had appellant's breach not prevented it from performing. Appellants do not contest the trial court's finding their refusal to sell lot number 1710 was a breach of the development agreement. Instead, appellants argue their breach did not cause Crockett to lose profits because there were in fact no profits to be had, given the state of the real estate market.

{36} The exhibit to the parties' Development Agreement outlined the parties' intention at the time they entered into the contract. Essentially, it deducted the cost of

the lot and the expenses per lot from the price obtained from the sale of the lot, to determine the anticipated average profit per lot.  It projected an average lot with a selling price of $34,030.00 would yield an average profit of $13,000.00.  The sale of all 100 lots would result in total profits of $1,300,000.00, which the parties would split approximately $830,000.00 to appellants and $570,000.00 to Hayes.

{37}  The exhibit stated based upon the projected profits, the parties expected when all 100 lots had sold Hayes would receive 15 lots, plus a small amount in cash. He would receive 3 lots after the first set of 25 are sold, and 4 lots thereafter as the next set of 25 lots are sold, until they were all sold.

{38}  The contract contained a provision for a premium of $2,500 over and above the selling price of the lots, to be divided 60%-40% between the parties if Crockett sold the lot, or if a third party sold a lot, the parties would split $1,000 equally. The calculations on Exhibit E did not include any premiums.

{39}  The trial court utilized the exhibit in fashioning its damage award, but discounted the lots from the projected optimistic selling price of $32,030.00 to a present value of $24,000.00.  The sole error the court made was in multiplying the cost per lot by the total 15 lots the parties expected Hayes to receive, when in fact, 3 of the lots had already been transferred. Hayes is actually due the cash value of 12 lots.

{40}  There was testimony presented that Crockett had completed 90% of the development portion of its obligations under the contract and the court deducted $51,045.00, 10% of Crockett's expected profits, as savings Crockett realized by not completing its development obligation.  Because the costs of the marketing portion of its contract had already been included in the computations in the exhibit, the trial court did

not deduct any savings Crockett might realize by being relieved of its marketing obligations.

**{41}** After the parties' contractual relationship was severed, appellants retained full fee title to all the property, subject only to the mechanic's lien. While it is true the entire risk of the market's recovery now rests on appellants, it is also true that appellants also will retain whatever profits are generated as the market recovers, as well as the property development that has been done.

**{42}** Appellants take issue with the court's finding the Development Agreement permitted Crockett to develop phase two. Appellants argue paragraph eight of the contract "implicitly constrained" Crockett from building up on unsalable inventory at the expense of Dr. Rohrer or appellants. Paragraph eight states "any profits remaining after Rohrer has received a proportionate return of capital for the lots sold, and after premiums, discounts and development costs and interest shall have been split 60% Rohrer and 40% Crockett."

**{43}** We find paragraph eight of the Development Agreement anticipates how the profits will be paid out. Nowhere does it specify that a given number of lots must be sold from one phase before the parties proceed to phase two. There is nothing in the contract requiring Crockett or Hayes to obtain anyone's permission to proceed. The only contingency in the contract is paragraph nine, which requires approval of the proposed development by the Ohio Environmental Protection Agency and any other necessary governmental agencies.

**{44}** We agree with the court's finding the Rohrer children failed to show they had any authority to decide phase two should or should not go forward. Dr. Rohrer was

still alive at the time, and not only had he not given authority to the children, he had given power of attorney to two other persons. We agree with the trial court appellants attempted, in the court's words, to simply walk away from the contract because they did not believe it was profitable.  The fact that the performance of a contract has become more expensive does not relieve a party of the obligation to perform.

**{45}** We find the trial court's decision appellants breached the contract and Crockett did not, is supported by the evidence. We further find the court properly awarded Crockett expectation damages as if it had fully performed.

**{46}** The first and second assignments of error are overruled in part and sustained as to the number of lots Hayes should receive, 12 rather than 15.

III.

**{47}** In their third assignment of error, appellants argue the trial court had no rational basis for its $24,000.00 per lot monetary damages award. Appellants argue the trial court over-valued the lots Crockett was entitled to take as its share of the profits.

**{48}** The evidence presented varied from approximately $15,000.00 to $34,000.00. Appellants urge a more accurate valuation would have been approximately $15,000.00 per lot.  This would represent more than a 50% loss in value from the initial $34,000.00.  The trial court calculated the diminution to be closer to 25%.  We find the trial court's determination to reduce the value of the lots to $24,000.00 each is supported by some competent and credible evidence.  In addition, the trial court declined to award any of the $1,500.00 additional premiums for any sales, even though the premium was not calculated into the figures on Exhibit E to the parties' contract. The

court's award includes only the premiums previously earned but unpaid. We find no error.

**{49}** The third assignment of error is overruled.

IV.

**{50}** In their fourth assignment of error, appellants argue the trial court erred in assigning joint and several liability to Mohler as a partner with Rohrer Development Company.  Appellants argue at best Mohler was a third party beneficiary to the contract between Crockett and Dr. Rohrer. They also assert by definition an LLC such as Rohrer Development Company cannot be a partnership. While appellants are correct that the LLC cannot contain partners within its organization, the LLC can be a partner with other legal entities in a business.

**{51}** In R.C. 1776.22 a partnership is defined as "an entity of two or more persons to carry on as co-owners of a business for profit ..." The statute provides a person who receives a share of profits of a business is presumed to be a partner in the business unless the profits are received as consideration for certain debts or compensation, none of which are present here.

**{52}** The record indicates Dr. Rohrer sold a 25% interest in Rohrer Development Company to Mohler, which included a 25% share of profits generated by the development company from the Development Agreement.  However, the sharing of profits is not alone conclusive of the existence of a partnership relationship in the absence of other essential elements of partnership. *Berger v. Dare*, 99 Ohio App.3d 103, 106, 649 N.E.2d 1316 (1994) citations deleted. A court may find an implied

partnership from the totality of attendant facts and circumstances. *Madden Investment Co. v. Stephenson's Apparel,* 162 Ohio App.3d 51, 2005–Ohio–3336 (2nd Dist.).

**{53}** We find Mohler Lumber was engaged in the enterprise with Dr. Rohrer from the very outset, initiating the negotiations that ended with the Development Agreement, undertaking an obligation to supply lumber for the construction, and receiving a share of the profits, and hence the trial court did not err in determining it should be jointly and severally liable for breach.

**{54}** The fourth assignment of error is overruled.

V.

**{55}** In their fifth assignment of error, appellants argue any duty to convey a particular lot was breached with respect to Crockett Homes and not Crockett Construction. The trial court treated two entities generally as a single party. Crockett responds when appellants breached the contract, both Crockett Homes and Crockett Construction were damaged in their ability to perform their obligations under the contract and to receive lots and profits pursuant to Exhibit E and the Development Agreement. We find no error in the court's award herein.

**{56}** The fifth assignment of error is overruled.

VI.

**{57}** In their sixth assignment of error, appellants argue the trial court erred in assigning half the advertising costs to the appellants. The Development Agreement did not make any provision for the payment of the advertising costs, but it did contain a paragraph providing the agreement constituted the entire agreement between the

parties and no modification or alteration of the terms would be binding unless set out in writing to the execution of the contract.

{58} The contract provided that Crockett would advertise and promote the lots to be developed and perform the services of a general contractor without additional compensation other than the profit sharing as set out in the contract. Crockett agrees that the contract does indeed require it advertise and promote the lots to be developed but notes it does not state Crockett is to absorb the cost of the advertising and promoting.

{59} Loomis testified that as agent for Rohrer Development Company he agreed it would share the costs 50% with Crockett, and Hayes also confirmed this was the arrangement between the parties. Paragraph Three of the Development Contract provides any extraordinary development costs in excess of those listed on Exhibit E would be approved by the parties with the cost divided 50%-50%. Exhibit E does not include any figure for advertising and promoting costs calculated into the profit-sharing agreement. Accordingly, we find the trial court did not err in finding based upon the parties' agreement and the contract, appellants should share in the cost.

{60} The sixth assignment of error is overruled.

VII.

{61} In their seventh assignment of error, appellants argue that the Development Agreement was between Dr. Rohrer and Crockett, and when the doctor died, any duty arising out of the Development Agreement terminated.

{62} In *Smith v. Ohio State University Hospitals*, 110 Ohio App.3d 412, 415, 674 N.E.2d 721 (10th Dist.1996), the court found the phrase "personal services

contract" is not defined by statute, and the case law interpreting the phrase is sparse. The court cited *Yellow Cab of Cleveland, Inc. v. Greater Cleveland Regional Transit Authority,* 72 Ohio App.3d 558, 595 N.E.2d 508 (8th Dist. 1991), which analyzed the phrase in the context of bidding requirements for purposes of R.C. 306.43. In the *Yellow Cab* case, the court held a personal services contract is a contract "in which the offeree is vested with discretion in accomplishing the assigned tasks because his skills, knowledge, experience and expertise are unique to the area and could not be duplicated by others not similarly qualified." *Id.* at 563, 595 N.E.2d at 511.

**{63}** The *Smith* court concluded: "[r]educed to its essence, a personal services contract suggests a degree of control exercised by the purchaser over the services to be performed by a chosen individual or individuals; a purchased services contract indicates, as the name implies, a purchase of services without regard to the specific individual to provide the service." *Id.* at 416.

**{64}** The contract does not contain any indication the parties anticipated the contract would terminate upon the death of any of the parties, nor does it require performance by Dr. Rohrer instead of his agent or delegate. Dr. Rohrer gave Loomis and Zepp power of attorney to act on his behalf.

**{65}** Further, Dr. Rohrer's estate assumed title of all the assets Dr. Rohrer possessed at his death, including Rohrer Development Company, and title to all the real estate. The estate cannot retain all the assets without also taking any of the obligations associated with them. The court found the real estate identifies a limited liability corporation, but nevertheless the title holder of the real estate was always Dr. Rohrer.

**{66}** We find the trial court did not err in refusing to find the contract terminated upon Dr. Rohrer's death.

**{67}** The seventh assignment of error is overruled.

VIII.

**{68}** In their eighth assignment of error, appellants argue the trial court erred in finding Crockett Homes only owed $52,150.84 to Mohler. The trial court found Mohler did not prove all the damages it claimed. We have reviewed the record, and we agree Mohler did not prove all the damages it claimed.

**{69}** The eighth assignment of error is overruled.

**{70}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, but reversed as to the calculation of damages. We find the trial court's monetary award for the remaining lots due Crockett does not take into account the three lots Crockett already received. Utilizing the trial court's evaluation of $24,000.00 each, we find the court's award is $72,000.00 too high.

**{71}** Pursuant to App. R. 12 (B) we hereby render the judgment or final order the trial court should have rendered. We find due from appellants to Crockett $10,000.00 as losses resulting from the failure to issue a deed and close on the sale of the single lot; payment for 50% of the advertising and maintenance valued at $11,590.95; earned but unpaid premiums for lots sold under the development agreement at $16,500.00 and $233,955.00 as compensation for the 12 lots to which Crockett Construction would have been entitled had the development agreement been completed, minus cost savings in the amount of $51,045.00.

**{72}** In total, we enter judgment in favor of Crockett Construction Company and against the appellants, jointly and severally, in the amount of $275,045.00 plus statutory interest. The court's award of $52,150.84 in favor of Mohler and against Crockett is affirmed.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

WSG:clw 0413                            HON. JOHN W. WISE

[Cite as *Crockett Homes, Inc. v. Hamilton*, 2012-Ohio-2162.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CROCKETT HOMES, INC., ET AL | : | |
| | : | |
| Plaintiffs-Appellees | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JENNIFER ROHRER HAMILTON, ET AL | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | CASE NO. 2011-CA-00222 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part, and modified to reflect the judgment the trial court should have rendered in favor of Crockett and appellants in the amount of $275,045.00 and in favor of Mohler and against Crockett Homes in the amount of $52,150.84, both plus interest at the statutory rate. Costs to be split between Crockett and the appellants.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE